UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN SOTO PALMER, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>STEVEN HOBBS, *et al.*,<br><br>    Defendants. | Cause No. C22-5035RSL<br><br>ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on the "Motion to Dismiss Defendants Laurie Jinkins and Andrew Billig" (Dkt. # 37) and "Plaintiffs' Motion for Preliminary Injunction" (Dkt. # 38). Plaintiffs filed this lawsuit to challenge the redistricting plan for Washington's state legislative districts, alleging that the Washington State Redistricting Commission ("the Commission") intentionally configured District 15 in a way that cracks apart politically cohesive Latino/Hispanic[1] populations and placed the district on a non-presidential election year cycle in order to dilute Latino voters' ability to elect candidates of their choice. Plaintiffs assert a claim under Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301(a), and request that the Court enjoin defendants from utilizing the existing legislative map and order the implementation

---

[1] The Complaint and this Order use the terms "Hispanic" and "Latino" interchangeably to refer to individuals who self-identify as Hispanic or Latino and to persons of Hispanic Origin as defined by the United States Census Bureau and United States Office of Management and Budget.

ORDER - 1

and use of a valid state legislative plan that does not dilute, cancel out, or minimize the voting strength of Latino voters in the Yakima Valley.

Plaintiffs filed this lawsuit on January 19, 2022, after the Commission completed its redistricting tasks but before the legislature approved amendments to the plan under RCW 44.05.100(2). The redistricting plan became final on February 8, 2022. The motion for preliminary injunctive relief was filed on February 25, 2022, and was noted on the Court's calendar for consideration on March 25th pursuant to LCR 7(d)(3). In their motion, plaintiffs request that the Court enjoin defendants from using the existing legislative plan and require them to adopt a state legislative plan that complies with Section 2 of the VRA. Plaintiffs assert that it is possible to draw a lawful legislative district in the Yakima area, but they did not provide a replacement legislative district map with their motion.

Defendants are Steven Hobbs, Washington's Secretary of State, Laurie Jinkins, the Speaker of the Washington State House of Representatives, and Andy Billig, the Majority Leader of the Washington State Senate. All three defendants argue that they had nothing to do with the adoption of the challenged plan, that they lack the power to redraw or change the final plan that was approved by the Commission and amended by the legislature pursuant to RCW 44.05.100, and that they have been improperly named as defendants. Secretary Hobbs argues that the Commission, the members of the Commission in their official capacities, and/or the State of Washington should be joined as defendants to ensure that a proper and adverse party

ORDER - 2

can mount a meaningful defense to plaintiffs' claims.[2] Representative Jinkins and Senator Billig seek dismissal of the claims against them on the ground that plaintiffs failed to plausibly allege an entitlement to relief from either of them. They suggest that the House of Representatives and Senate as legislative bodies might be the appropriate defendants if plaintiffs are seeking to compel a vote to reconvene the Commission under RCW 44.05.120. The named defendants take no position on whether plaintiffs have demonstrated a likelihood of success on the merits of their VRA claim. Mr. Hobbs argues, however, that if preliminary relief is warranted, he and the local elections officers (typically the county auditors) would need to have the revised plan in hand at least five weeks before the May 2nd deadline for revising precinct boundaries – which was Monday, March 28. In reply, plaintiffs provide a proposed remedial plan and argue that, even if the Court were to order use of their plan after March 28th, "the state has ample time to administer the 2022 elections according to current deadlines," citing *Wisconsin Legislature v. Wisconsin Elections Commission*, No. 21A471, 2022 WL 851720, at *1 (U.S. Mar. 23, 2022).

**A. Motion to Dismiss Defendants Laurie Jinkins and Andrew Billig (Dkt. # 37)**

All parties agree that, under Washington law, the Legislature and its leaders play some role in the redistricting process. The leaders of the four legislative caucuses (*i.e.*, the House and Senate majorities and minorities) appoint the four voting members to the Commission. RCW 44.05.030(1). This task was completed by January 2021 and does not appear to be at issue in this lawsuit. The Commission then prepares the redistricting plans, which it transmits to the

---

[2] Secretary Hobbs has filed a separate motion to join additional defendants. Dkt. # 53.

ORDER - 3

Legislature. The Legislature has a limited power to amend the plans by a two-thirds majority vote during the first thirty days of the legislative session. Wash. Const. art II, § 43(7); RCW 44.05.100(2). The Legislature exercised that power this year, and the legislative amendments to the Commission's district maps became final on February 8, 2022. By statute, the Commission remains in existence until July 1, 2022, after which the Secretary of State takes custody of the Commission's official records. RCW 44.05.110(1) and (2). If changes to the legislative plans are necessary after the Commission ceases to exist, "the legislature may, upon an affirmative vote in each house of two-thirds of the members elected or appointed thereto, adopt legislation reconvening the [C]omission for the purpose of modifying the redistricting plan." RCW 44.05.120(1).

Plaintiffs assert that Representative Jinkins and Senator Billig have the "power to call for a vote to reconvene the Commission" for the purpose of correcting/redrawing the legislative plan. Dkt. # 44 at 4. But at this point in the process, neither the Legislature nor the caucus leaders have the power to provide the relief plaintiffs request. Even if Representative Jinkins and Senator Billig were able to control the Legislature, that body's power to reconvene the Commission will arise only after the Commission has ceased to exist on July 1st. To the extent plaintiffs seek an order directing that the redistricting plans be redrawn, it appears that the Commission would be the appropriate recipient of such an order at this stage of the process.[3] To the extent plaintiffs seek an order directing that their proposed plan be utilized for the next

---

[3] The Court notes, without deciding, that the Legislature might be the appropriate recipient of such an order after July 1st.

ORDER - 4

election cycle, Representative Jinkins, Senator Billig, and/or the Legislature play no role in the use or enforcement of the plan. Because plaintiffs have not alleged "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" against these defendants, the claims against Representative Jinkins and Senator Billig are hereby DISMISSED. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, at 570 (2007)).

**B. Defendant Steven Hobbs**

Secretary Hobbs was not involved in the creation of the district maps to which plaintiffs object and has no authority to recraft or alter the maps that were approved by the Commission and amended by the Legislature. He is, however, the Secretary of State, with the responsibility for overseeing elections in the State of Washington. RCW 29A04.216 and 29A.04.230. To the extent plaintiffs seek an order enjoining enforcement of the existing maps or the Court orders that a remedial districting plan be utilized in future election cycles, Secretary Hobbs (and possibly the county auditors impacted by the order) would be the appropriate recipients of that order.

**C. The *Purcell* Principle**

Plaintiffs' request for a preliminary injunction that would affect the 2022 election cycle is subject to the so-called *Purcell* principle "that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*,

ORDER - 5

140 S. Ct. 1205, 1207 (2020) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006)).[4] When faced with an application to enjoin election machinery that is already in progress, the Court must not only weigh "the harms attendant upon issuance or nonissuance of an injunction," but also "considerations specific to election cases," such as election chaos and voter confusion, and "its own institutional procedures" that might cause further delay, such as appellate or *en banc* review. *Purcell*, 549 U.S. at *4-5. "How close to an election is too close may depend in part on the nature of the election law at issue[] and how easily the State could make the change without undue collateral effects. Changes that require complex or disruptive implementation must be ordered earlier than changes that are easy to implement." *Merrill v. Milligan*, 142 S. Ct. 879, 881 n.1 (2022). The United States Supreme Court recently countenanced a redrawing of district maps with approximately twenty weeks between the summary correction of errors and the upcoming primary election. *Wis. Legislature*, 2022 WL 851720, at *1.

In this case, plaintiffs seek to alter the state legislative district plan, a fundamental and foundational aspect of the electoral process. Redistricting moves voters – and potentially candidates -- from one district to another and alters everything from precinct boundaries to voter records to ballot layouts. The evidence in the record shows that implementation of a new electoral map takes time and expertise. The Yakima County Auditor's Office, with the help of the Director of Elections in the Office of the Secretary of State, began creating precinct boundaries almost immediately after the redistricting map became final on February 8, 2022,

---

[4] For purposes of this analysis, the Court assumes that plaintiffs have shown a likelihood of success on the merits of their VRA claim and irreparable harm in the absence of injunctive relief.

ORDER - 6

and it took three weeks to ensure that the new precincts met statutory requirements. Dkt. # 51 at ¶¶ 4-11. It then took another two weeks to get the revised precinct boundaries approved by the Yakima County Commission. Dkt. # 51 at ¶¶ 13-14. The statutory deadline for legislative entities to revise the precinct boundaries is May 2, 2022. In order to redo the work that has already been done by that deadline, defendants assert that they would have needed the revised district plans in hand by March 28th. Plaintiffs do not challenge this evidence, instead arguing that "the Court can and should order the use of a remedial plan by March 28." Dkt. # 54 at 8-9. March 28th was the first business day on which plaintiffs' motion for preliminary injunctive relief was ripe for consideration. Even if an order could have issued immediately (which was unlikely in the best of circumstances and even more unlikely given the complicating factors regarding the identity of the proper parties), plaintiffs proposed a remedial legislative plan for the first time in their reply submission, depriving defendants of an opportunity to respond in writing. Oral argument was therefore necessary, making the issuance of an order on March 28th an impossibility.

Plaintiffs rely on *Wisconsin Legislature v. Wisconsin Elections Commission*, No. 21A471, 2022 WL 851720, at *1 (U.S. Mar. 23, 2022), to argue that "[e]ven if the Court were to order use of Plaintiffs' Proposed Plan shortly after March 28, the state has ample time to administer the 2022 elections according to current deadlines." Dkt. # 54 at 9. In Washington, the primary election is scheduled for August 2, 2022, with the voting period opening eighteen days earlier. RCW 29A.04.311; RCW 29A.40.070(1). Primary ballots must be mailed to overseas residents and military personnel by June 18th. RCW 29A.40.070(2); 52 U.S.C. § 20302(a)(8).

ORDER - 7

The deadlines for candidates to announce themselves, be certified by the Secretary of State, and provide statements and photographs for the voters' pamphlets all occur within an eleven-day window in May. RCW 29A.24.050; RCW 29A.36.010; WAC 434-381-120. Before any of that can happen, the county legislative authorities must establish the boundaries of election precincts, a task that must be completed by May 2nd. RCW 29A.16.040. As described above, establishing precinct boundaries generally takes five weeks, making March 28th the practical deadline for finalizing the redistricting plan in an election year. Counsel for Secretary Hobbs indicated at oral argument that, even considering the targeted changes proposed by plaintiffs in reply, the window for adjusting to the changes impacting Klickitat County has closed and the window for accommodating Kittitas County alterations expires in two days. In response, plaintiffs offered to rework their proposed map to further reduce the number of precincts affected and continue to assert that *Wisconsin Legislature* shows that election officials in Washington can accommodate alterations at this point in time. The record before the Court does not support plaintiffs' factual assertion, however, and *Wisconsin Legislature* is distinguishable. Even if the Court assumes that the election schedule in Wisconsin is similar to that which applies in Washington, the Supreme Court remanded the maps for correction on March 23rd, and the Wisconsin primary is scheduled for August 9th. Thus, the election officials in Wisconsin had four more weeks in which to complete all necessary tasks than is available in this case. Even if *Wisconsin Legislature* were considered a benchmark, it does not compel the conclusion that legislative map amendments ordered in mid-April are timely under *Purcell*.

ORDER - 8

Finally, plaintiffs argue that the candidate filing deadline for Legislative District 15 and any other district that may be reconfigured in this litigation could be delayed without impacting the election officials' ability to hold a primary on August 2nd. There is no evidence to support this assertion. The candidate filing period is May 16-20 and is immediately followed by deadlines for withdrawal, certification, and the provision of voters' pamphlet information. Election officials have less than four weeks from the date on which candidates are certified to the date on which overseas ballots must be mailed. During that period, they must design, translate, and print the various versions of the ballot that account for every combination of positions for which a precinct or portion of a precinct could vote. Defendants have provided unrebutted evidence that, in Yakima County, this process takes a full month to complete. Dkt. # 51 at ¶ 20. The date on which ballots must be mailed to military and overseas voters is fixed by both state and federal law: plaintiffs' suggestion that the Court can alter deadlines in a schedule that are daisy-chained to later, fixed events without impacting the election is unsupported and unpersuasive.

The nature of the election challenge at issue and the difficulties facing the Secretary of State and local election officials if a change in the legislative district maps is made at this late date suggest that we are too close to the 2022 election to enjoin the use of the existing plan for this election cycle. The Court further finds that any delay in the establishment of precinct boundaries will likely lead to confusion for both candidates and voters in the affected area. In addition, there would likely be an appeal of any preliminary injunction entered by the District Court (as evidenced by the pending motion to intervene at Dkt. # 57) which would give rise to

ORDER - 9

additional delay and uncertainty that cannot be accommodated with an August 2nd primary date. Consideration of the factors enumerated in *Purcell* and *Merrill* therefore compel the conclusion that the Court should refrain from interfering in the current election cycle.

For all of the foregoing reasons, the motion to dismiss filed by Representative Jinkins and Senator Billig (Dkt. # 37) is GRANTED, and plaintiffs' motion for preliminary injunction (Dkt. # 38) is DENIED.

Dated this 13th day of April, 2022.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge