1

2

3

4

5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6

SUSAN SOTO PALMER, *et al.*,                    Cause No. C22-5035RSL

7
                    Plaintiffs,

8
           v.                                   ORDER GRANTING MOTION TO
                                                INTERVENE

9
STEVEN HOBBS, *et al.*,

10
                    Defendants.

11        This matter comes before the Court on a "Motion to Intervene" filed by Jose Trevino (a

12   resident of Granger, Washington), Ismael Campos (a resident of Kennewick, Washington), and

13   Alex Ybarra (a State Representative and resident of Quincy, Washington). Dkt. # 57. Plaintiffs

14   filed this lawsuit to challenge the redistricting plan for Washington's state legislative districts,

15   alleging that the Washington State Redistricting Commission ("the Commission") intentionally

16   configured District 15 in a way that cracks apart politically cohesive Latino/Hispanic[1]

17   populations and placed the district on a non-presidential election year cycle in order to dilute

18   Latino voters' ability to elect candidates of their choice. Plaintiffs assert a claim under Section 2

19

20        [1] The Complaint and this Order use the terms "Hispanic" and "Latino" interchangeably to refer
     to individuals who self-identify as Hispanic or Latino and to persons of Hispanic Origin as defined by
21   the United States Census Bureau and United States Office of Management and Budget.

22   ORDER GRANTING MOTION
     TO INTERVENE - 1

1  of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301(a), and request that the Court enjoin

2  defendants from utilizing the existing legislative map and order the implementation and use of a

3  valid state legislative plan that does not dilute, cancel out, or minimize the voting strength of

4  Latino voters in the Yakima Valley.

5  Plaintiffs named as defendants Steven Hobbs (Washington's Secretary of State), Laurie

6  Jinkins (the Speaker of the Washington State House of Representatives), and Andy Billig (the

7  Majority Leader of the Washington State Senate). The claims against Representative Jinkins and

8  Senator Billig were dismissed on the ground that plaintiffs failed to plausibly allege an

9  entitlement to relief from either of them. Dkt. # 66 at 4-5. Secretary Hobbs does not have an

10  interest in defending the existing districting plan and has taken no position regarding the merits

11  of plaintiffs' Section 2 claim. The intervenors assert that they are registered voters who intend to

12  vote in future elections and that they have a stake in this litigation. Mr. Trevino falls within

13  District 15 as drawn by the Commission, Mr. Campos falls within District 8 and could find

14  himself in District 15 if new boundaries are drawn, and Representative Ybarra represents

15  District 13, the boundaries of which may shift if plaintiffs' prevail in this case.

16  **A. Intervention as of Right**

17  Rule 24 of the Federal Rules of Civil Procedure establishes the circumstances in which

18  intervention as a matter of right is appropriate:

19  (a) Intervention of Right. On timely motion, the court must permit anyone to
   intervene who:

20
21  (1) is given an unconditional right to intervene by a federal statute; or

22  ORDER GRANTING MOTION
   TO INTERVENE - 2

> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The Ninth Circuit has distilled four elements from Rule 24(a): intervention of right applies when an applicant "(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties." *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (citation omitted). Plaintiffs argue that intervenors cannot satisfy the first, second, or fourth criteria. "While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of intervention." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted).

**(1) Timeliness**

Intervenors' motion to intervene was timely filed. The motion was filed a week after it became apparent that none of the named defendants were interested in defending the existing redistricting map, and it had had no adverse impact on the resolution of the then-pending motion for preliminary injunction.

**(2) Significant Protectable Interest**

A proposed intervenor "has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally

ORDER GRANTING MOTION
TO INTERVENE - 3

protected interest and the plaintiff's claims." *Kalbers v. United States Dep't of Justice*, 22 F.4th 816, 827 (9th Cir. 2021) (citation omitted). "The interest test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. . . . Instead, the 'interest' test directs courts to make a practical, threshold inquiry and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks, citations, and alterations omitted). "The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant." *Id.*

Intervenors Trevino and Campos claim "an interest in ensuring that any changes to the boundaries of [their] districts do not violate their rights to 'the equal protection of the laws' under the Fourteenth Amendment . . . ." Dkt. # 57 at 6. Representative Ybarra claims "a heightened interest in not only the orderly administration of elections, but also in knowing which voters will be included in his district." *Id*. All three intervenors claim an interest in the boundaries of the legislative districts in which they find themselves and "in ensuring that Legislative District 15 and its adjoining districts are drawn in a manner that complies with state and federal law." *Id*. at 6-7.

As an initial matter, under Washington law, intervenors have no right or protectable interest in any particular redistricting plan or boundary lines. The legislative district map must be redrawn after each decennial census: change is part of the process. Intervenors, in keeping

ORDER GRANTING MOTION
TO INTERVENE - 4

1  with all other registered voters in the State of Washington, may file a petition with the state

2  Supreme Court to challenge a redistricting plan (RCW 44.05.130), but they have no role to play

3  in the redistricting process. Nor is there any indication that a general preference for a particular

4  boundary or configuration is a legally cognizable interest.

5      Intervenors do not allege that their right to vote or to be on the ballot will be impacted by

6  this litigation. Nor have they identified any direct and concrete injury that has befallen or is

7  likely to befall them if plaintiffs' Section 2 claim is successful. Rather, they broadly allege that

8  they have an interest in ensuring that any plan that comes out of this litigation complies with the

9  Equal Protection Clause, state law, and federal law. But a generic interest in the government's

10  "proper application of the Constitution and laws, and seeking relief that no more directly and

11  tangibly benefits [the intervenors] than it does the public at large[,] does not state an Article III

12  case or controversy" (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)), and it would

13  be premature to litigate a hypothetical constitutional violation (*i.e.*, being subjected to a racial

14  gerrymander through a remedial map established in this action) when no such violative conduct

15  has occurred. With the possible exception of Representative Ybarra (discussed below),

16  intervenors have not identified a significant protectable interest for purposes of intervention

17  under Rule 24(a).

18      **(3) Adequacy of Representation**

19      In addition to the uncognizable interest in legislative district boundaries and the generic

20  interest in ensuring that any new redistricting map complies with the law, Representative Ybarra

21

22  ORDER GRANTING MOTION
TO INTERVENE - 5

1   claims an interest in avoiding delays in the election cycle and in knowing ahead of time which

2   voters will be included in his district. The Court assumes, for purposes of this motion, that these

3   interests are significant enough to give Representative Ybarra standing to pursue relief in this

4   litigation. He cannot, however, show that the existing parties will not adequately represent these

5   interests.

6          "The most important factor to determine whether a proposed intervenor is adequately

7   represented by a present party to the action is how the intervenor's interest compares with the

8   interests of existing parties. . . . Where the party and the proposed intervenor share the same

9   ultimate objective, a presumption of adequacy of representation applies, and the intervenor can

10  rebut that presumption only with a compelling showing to the contrary. . . ." *Perry v.*

11  *Proposition 8 Off. Proponents*, 587 F.3d 947, 950-51 (9th Cir. 2009) (internal quotation marks,

12  citations, and alterations omitted). The arguably protectable interests asserted by Representative

13  Ybarra were ably and successfully urged by Secretary Hobbs in opposition to plaintiffs' motion

14  for a preliminary injunction. Concerns regarding delays in the election cycle that might arise if

15  district boundaries were redrawn this spring and the disruption to candidates who were

16  considering a run for office were identified by Secretary Hobbs and played a part in the Court's

17  decision.

18         Because Representative Ybarra's arguably protectable interests are essentially identical to

19  the arguments that were actually asserted by Secretary Hobbs, Representative Ybarra may defeat

20  the presumption (and evidence) of adequate representation only by making a compelling

21

22  ORDER GRANTING MOTION
    TO INTERVENE - 6

1    showing that Secretary Hobbs will abandon or fail to adequately make these arguments in the

2    future. *See Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (assessing the proposed

3    intervenor's efforts to rebut the presumption in terms of three factors: "(1) whether the interest

4    of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments;

5    (2) whether the present party is capable and willing to make such arguments; and (3) whether a

6    proposed intervenor would offer any necessary elements to the proceeding that other parties

7    would neglect"). Representative Ybarra has not attempted to show that Secretary Hobbs will fail

8    to pursue arguments regarding election schedules and the need for certainty as this case

9    progresses. The intervenors have therefore failed to show that the protectable interests they have

10   identified will not be adequately represented in this litigation.[2]

11   **B. Permissive Intervention**

12          Pursuant to Rule 24(b), "[o]n timely motion, the court may permit anyone to intervene

13   who . . . has a claim or defense that shares with the main action a common question of law or

14   fact. . . . In exercising its discretion, the court must consider whether the intervention will

15   unduly delay or prejudice the adjudication of the original parties' rights." In the Ninth Circuit,

16   "a court may grant permissive intervention where the applicant for intervention shows

17

18          [2] Representative Ybarra also argues that he will be able to add to the litigation by providing a
     "valuable perspective on the close interaction between race and partisanship" in opposition to plaintiffs
19   Section 2 claim, and that none of the existing parties is prepared to make such arguments. Dkt. # 57 at 9.
     That a proposed intervenor has testimony or other evidence that is relevant to a claim or defense does
20   not mean that they have a significant protectable interest for purposes of Rule 24(a), however. It is only
     protectable interests that must be adequately represented in the litigation when considering intervention
21   as a matter of right.

22   ORDER GRANTING MOTION
     TO INTERVENE - 7

1  (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim

2  or defense, and the main action, have a question of law or a question of fact in common." *City of*

3  *Los Angeles*, 288 F.3d at 403 (citation omitted). If the initial conditions for permissive

4  intervention are met, the court is then required to consider other factors in making its

5  discretionary decision on whether to allow permissive intervention.

> These relevant factors include the nature and extent of the intervenors' interest,
> their standing to raise relevant legal issues, the legal position they seek to advance,
> and its probable relation to the merits of the case. The court may also consider
> whether changes have occurred in the litigation so that intervention that was once
> denied should be reexamined, whether the intervenors' interests are adequately
> represented by other parties, whether intervention will prolong or unduly delay the
> litigation, and whether parties seeking intervention will significantly contribute to
> full development of the underlying factual issues in the suit and to the just and
> equitable adjudication of the legal questions presented.

*Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (internal footnotes

omitted). Plaintiffs argue that intervenors' motion is untimely, intervention would risk undue

delay and would unfairly prejudice plaintiffs, and intervenors' chosen counsel is likely to be a

witness in this matter and has already filed a lawsuit challenging Legislative District 15 that is

inconsistent with his representation here. Plaintiffs request that, if intervenors are permitted to

participate in this litigation at all, it should be in the role of *amicus curiae*, not as parties.

**(1) Timeliness**

For the reasons stated above, intervenors' motion to intervene was timely filed.

//

ORDER GRANTING MOTION
TO INTERVENE - 8

1  **(2) Undue Delay and Unfair Prejudice**

2  Plaintiffs argue that the resolution of their Section 2 claim will be unduly delayed and

3  they will be unfairly prejudiced if they are forced to expend resources responding to intervenors'

4  arguments. Plaintiffs acknowledge, however, that intervenors – unlike the defendants they chose

5  to name – intend to oppose plaintiffs' request for relief under Section 2. It is unclear how forcing

6  a litigant to prove its claims through the adversarial process could be considered unfairly

7  prejudicial or how the resulting delay could be characterized as undue. "That [intervenors] might

8  raise new, legitimate arguments is a reason to grant intervention, not deny it. *W. Watersheds*

9  *Project v. Haaland*, 22 F.4th 828, 839 (9th Cir. 2022). The presence of an opposing party is the

10  standard in federal practice: intervenors' insertion into that role would restore the normal

11  adversarial nature of litigation rather than create undue delay or unfair prejudice. To the extent

12  plaintiffs' opposition to intervention is based on their assessment that intervenors' arguments are

13  meritless or irrelevant, the Court declines to prejudge the merits of intervenors' defenses in the

14  context of this procedural motion.

15  **(3) Complications Arising From Counsel's Participation**

16  Plaintiffs do not cite, and the Court is unaware of, any authority supporting the denial of a

17  motion to intervene because of objections to the intervenors' counsel. At present, the Court does

18  not perceive an insurmountable conflict between the claims set forth in *Garcia v. Hobbs*, C22-

19  5152RSL, and intervenors' opposition to plaintiffs' Section 2 claim. If it turns out that counsel's

20  representation gives rise to a conflict under the Rules of Professional Conduct or if he is a

21

22  ORDER GRANTING MOTION
TO INTERVENE - 9

percipient witness from whom discovery is necessary, those issues can be heard and determined through motions practice as the case proceeds.

**(4) Other Relevant Factors**

After considering the various factors set forth in *Spangler*, 552 F.3d at 1329, the Court finds that, although intervenors lack a significant protectable interest in this litigation, the legal positions they seek to advance in opposition to plaintiffs' Section 2 claim are relevant and, in the absence of other truly adverse parties, are likely to significantly contribute to the full development of the record and to the just and equitable adjudication of the legal questions presented.

For all of the foregoing reasons, the motion to intervene (Dkt. # 57) is GRANTED. Intervenors shall file their proposed answer (Dkt. # 57-1) within seven days of the date of this Order. The case management deadlines established at Dkt. # 46 remain unchanged.

Dated this 6th day of May, 2022.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION
TO INTERVENE - 10