The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN SOTO PALMER, et. al., *Plaintiffs*, v. STEVEN HOBBS, et. al., *Defendants*, and JOSE TREVINO, ISMAEL CAMPOS, and ALEX YBARRA, *Intervenor-Defendants*. | Case No.: 3:22-cv-05035-RSL<br><br>Judge: Robert S. Lasnik<br><br>**PLAINTIFFS' MOTION TO BIFURCATE AND TRANSFER, STRIKE, AND/OR DISMISS INTERVENORS' CROSSCLAIM**<br><br>NOTE FOR MOTION CALENDAR: November 25, 2022 |

## INTRODUCTION

Over seven months ago, Intervenors sought to intervene in this case as *defendants* contending that Secretary Hobbs—then the sole defendant—would not adequately defend Legislative District 15 ("LD 15") against Plaintiffs' claims under Section 2 of the Voting Rights Act ("VRA").[1] At the time, they explained that they "do [not] seek to change . . . the Court's current scheduling order"[2] and "are not raising any new claims in any of their pleadings or motions filed today." Dkt. # 57 at 11-12. The Court denied intervention-as-of-right but granted permissive intervention. Two weeks prior, their counsel, Andrew R. Stokesbary, had filed a separate lawsuit

---

[1] Since that time, the Court ordered the joinder of the State as a Defendant.
[2] Since that time, Intervenors filed a motion to stay Plaintiffs' case, which this Court denied.

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM

1

on behalf of another individual challenging LD 15 as an unconstitutional racial gerrymander. *See Garcia v. Hobbs*, No. 3:22-cv-5152 (W.D. Wash.). That suit was assigned to a three-judge district court pursuant to 28 U.S.C. § 2284, which applies to the narrow circumstances in which a constitutional challenge to a congressional or statewide redistricting plan is alleged. Cases tried before a three-judge district court have direct appeals to the Supreme Court, whose appellate jurisdiction is mandatory not discretionary. *This case*, however, has proceeded for nearly eleven months before a single-judge Court because it involves only statutory challenges under the VRA. Such challenges are not subject to § 2284's narrow jurisdictional rule. Any appeal from this Court's decision would be to the Ninth Circuit, and Supreme Court review would be discretionary.

Now, at the eleventh hour, two of the three Intervenor-Defendants (Messrs. Ybarra and Trevino) no longer seek to defend the plan and have instead amended their Answer to file a crossclaim challenging LD 15's legality. That crossclaim alleges that LD 15 is an unconstitutional racial gerrymander—the precise claim that Intervenors' counsel has already filed on behalf of another plaintiff in the *Garcia* case. Yet rather than join the *Garcia* action already pending, Intervenors seek to upend this proceeding eleven months after it was filed and just as discovery is about to close.

This Court has—and should exercise—the discretion to manage its docket by bifurcating Intervenor's crossclaim pursuant to Fed. R. Civ. P. 42(b) and transferring and consolidating it with the *Garcia* case pursuant to 28 U.S.C. § 1404 and Local Civil Rule 42. Alternatively, the Court should strike or dismiss Intervenors' crossclaim. Moreover, because the racial gerrymandering claim necessarily depends upon the resolution of Plaintiffs' VRA claim, and because courts must not address constitutional claims if it is unnecessary to do so, the *Garcia* Court should hold the racial gerrymandering challenges in abeyance pending the resolution of Plaintiffs' VRA claim. It

does not make sense for the parties or the Court to expend time and resources on a claim that will likely become moot before trial.

## ARGUMENT

I. **The Court should bifurcate Intervenors' crossclaim and transfer it to be consolidated with the *Garcia* case.**

The Court should bifurcate Intervenors' crossclaim and transfer it to be consolidated with the *Garcia* case. Under Federal Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, or third-party claims." "Rule 42(b) . . . confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Zivkovic v. S. Calif. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). Moreover, under 28 U.S.C. § 1404(b), the Court may effect an intra-district transfer of a case "in the discretion of the court." Upon transfer, the Court has the power to consolidate matters pursuant to Local Civil Rule 42.

   A. **Bifurcation is necessary to avoid serious jurisdictional questions and prejudice to Plaintiffs.**

Bifurcation is necessary to avoid serious jurisdictional questions about whether it is permissible for a three-judge court to adjudicate Plaintiffs' statutory VRA claim based solely upon a *different party's* crossclaim asserted after the action has already commenced. Section 2284 provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Section 2284's limit on the convening of three-judge courts is jurisdictional. Statutes "delineating the classes of cases . . . falling within a court's adjudicatory authority" serve as limits on federal court's "subject-matter

jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004); *see also Bowles v. Russell*, 551 U.S. 205, 212 (2007) ("Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."). By specifying which cases a three-judge court *must* hear, the statute likewise defines which cases it may *not* hear. Thus, outside the narrow category of constitutional challenges to congressional or legislative plans, "there is no . . . jurisdiction" to convene a three-judge court to hear a case. *Wilson v. Gooding*, 431 F.2d 855, 858 (5th Cir. 1970); *see also Castanon v. United States*, 444 F. Supp. 3d 118, 128 (D.D.C. 2020) (referring to § 2284 as the three-judge court's "statutory grant").

Section 2284 is strictly construed to avoid the drain on judicial resources and the extraordinary complication of aligning three federal judges' schedules to adjudicate a case. "The three-judge district court is . . . an extraordinary court and technical requirements to its jurisdiction are to be strictly construed." *Jehovah's Witnesses in State of Wash. v. King Cty. Hosp.*, 278 F. Supp. 488, 493 (W.D. Wash. 1967), *aff'd*, 390 U.S. 598 (1968); *see also Sands v. Wainwright*, 491 F.2d 417, 421 (5th Cir. 1973) (noting that the three-judge court requirement is "'a serious drain upon the federal judicial system'" and must "be narrowly construed" (quoting *Phillips v. United States*, 312 U.S. 246, 250 (1941))); *Nixon v. Richey*, 513 F.2d 430, 446 (D.C. Cir. 1975) (explaining that three-judge court must be convened "only and strictly as Congress has prescribed").

Most courts to consider the issue have recognized that statutory VRA challenges to redistricting plans must be heard by an ordinary single-judge district court and not a three-judge district court. *See, e.g.*, *Chestnut v. Merrill*, 356 F. Supp. 3d 1351, 1354 (N.D. Ala. 2019) ("A claim solely alleging a Section 2 violation falls outside a plain reading of § 2284."); *Johnson v. Ardoin*, No. 18-625-SDD-EWD, 2019 WL 2329319, at *3 (M.D. La. May 31, 2019) ("[Section

2284] applies only when the constitutionality of apportionment is being challenged."); *Ariz. Minority Coalition for Fair Redistricting v. Ariz. Independent Redistricting Comm'n*, 366 F. Supp. 2d 887, 894-95 (D. Ariz. 2005) (rejecting request for three-judge court because "Plaintiffs' challenge [to] the 2002 Plan under § 2 of the VRA is statutory, not constitutional"). It is true that when a *plaintiff* raises both statutory and constitutional challenges, a properly convened three-judge court may "exercise a brand of supplemental jurisdiction" over the statutory claims, *see, e.g.*, *Castanon*, 444 F. Supp. 3d at 128, but that is different from situations in which a different party seeks to convert the original plaintiffs' statutory claim into a proceeding heard by a three-judge court.[3]

Empaneling a three-judge district court for this entire case because of Intervenors' belated crossclaim would prejudice Plaintiffs because it would inject uncertainty as to the three-judge district court's jurisdiction to adjudicate their case. Should Plaintiffs prevail and the State appeal, the Supreme Court might determine that a three-judge district court lacked jurisdiction to decide Plaintiffs' VRA claim, requiring the case to be vacated and adjudicated anew. *See, e.g.*, *Allen v. State Bd. of Elections*, 393 U.S. 544, 560 (1969) (holding that Supreme Court has "jurisdiction over an appeal brought directly from the three-judge court of only if the three-judge court was properly convened"). This would jeopardize the ability of Plaintiffs to attain relief in time for the 2024 election. Plaintiffs should not be forced to shoulder the risk that their case has been decided

---

[3] Plaintiffs are aware of one three-judge district court that has, over the plaintiffs' objection, consolidated a case raising only statutory redistricting challenges with other cases raising constitutional challenges. *See LULAC v. Abbott*, No. 21-CV-00259-DCG-JES-JVB (W.D. Tex. 2021). But other courts have declined to consolidate such cases, citing jurisdictional limitations. *See, e.g.*, *Caster v. Merrill*, No. 2:21-cv-1536-AMM, 2022 WL 264819, at *1 (N.D. Ala. Jan. 24, 2022) (noting that case raising statutory claims remained before single judge while constitutional claim cases were before three-judge court), *probable juris. noted, cert. granted before judgment, and stayed pending appeal on other grounds*, *Merrill v. Milligan*, 142 S. Ct. 879 (U.S. 2022).

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM

5

by a Court lacking jurisdiction to do so because of the procedural gamesmanship of Intervenors—who have repeatedly sought to delay this case.

This case is already set for trial, and it is unlikely that two new federal judges will have Plaintiffs' trial date available on their calendars. Plaintiffs' trial date has already slipped five months and because the Supreme Court's *Purcell* principle requires changes to district lines well in advance of elections, further delay should be avoided.

Intervenors' crossclaim raises substantial jurisdictional questions casting doubt on a three-judge court's ability to adjudicate Plaintiffs' case. This potentially jeopardize the effectiveness of any relief Intervenors may attain. As it risks delay to the resolution of Plaintiffs' suit, Intervenors' crossclaim should be bifurcated.

**B.     Bifurcation is warranted for judicial economy and in accord with the constitutional avoidance principle.**

Bifurcation is warranted for judicial economy and in accord with the constitutional avoidance principle. Plaintiffs have asserted a statutory VRA violation (both a results-only claim and an intentional discrimination claim) while Intervenors and the *Garcia* plaintiffs have raised constitutional challenges to LD 15. For two reasons it makes sense for the convenience of the parties and the Court to bifurcate the claims.

First, resolution of Plaintiffs' VRA claim is a necessary predicate to Intervenors' and the *Garcia* plaintiff's racial gerrymandering claim. As Intervenors themselves acknowledge in their crossclaim allegations, a legislative district is not an unconstitutional racial gerrymander if the VRA requires its race-conscious drawing. Am. Answer Crossclaim ¶ 18. If Plaintiffs prevail on their VRA claim, Intervenors' crossclaim and the *Garcia* plaintiff's claim will become moot. Not only will the district they have challenged cease to exist, but the predicate of their constitutional

claim—that Section 2 does not require a Latino opportunity district in the Yakima area, *see id.* ¶ 26—will have been rejected by the Court. There will be no cognizable racial gerrymandering claim available against either the enjoined version of LD 15 in effect now or the remedial district ordered to remedy Plaintiffs' VRA claim. Plaintiffs' VRA claim is thus precisely the type of "potentially dispositive preliminary issue[]" that warrants bifurcation of Intervenors' crossclaim. *Zivkovic*, 302 F.3d at 1088. There is no point in the parties or the Court expending time and resources litigating the racial gerrymandering claim when Plaintiffs' Section 2 claim will potentially prove dispositive. Indeed, a review of Plaintiffs' expert reports (detailing the presence of the *Gingles* factors, the totality of circumstances, and the intentional discrimination that pervaded the adoption of LD 15) illustrates that it is *likely* that their Section 2 claims will indeed prove dispositive. *See* Dkt. # 104 (expert reports of Dr. Collingwood, Dr. Estrada, and Dr. Flores).

Second, even if resolution of Plaintiffs' claim were not a necessary predicate determination to Intervenors' crossclaim and the *Garcia* plaintiff's claim, the principle of constitutional avoidance would nevertheless counsel against the Court adjudicating the racial gerrymandering claim when the lawfulness of LD 15 can be decided on statutory grounds. *See Lyng v. Nw. Indian Cemetery Protect Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *see also Caster*, 2022 WL 264819, at *84 (declining to reach racial gerrymandering claim because of finding that district violates Section 2 of the VRA).

This case is a quintessential candidate for bifurcation. Although Plaintiffs are not parties to the *Garcia* case, Plaintiffs respectfully note that the most efficient course is to hold that case in abeyance pending resolution of this case.[4]

### C. Intervenors' crossclaim should be transferred and consolidated with the *Garcia* case before that case's three-judge court.

In addition to bifurcating Intervenors' crossclaim, that crossclaim should be transferred and consolidated with the *Garcia* case pursuant to 28 U.S.C. § 1404(b) and Local Civil Rule 42. Under 28 U.S.C. § 1404(b), a party may file a motion for an action to be transferred "in the discretion of the court, from the division in which pending to any other division in the same district." Section 1404 "permits transfers to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Dixon v. Mountain View Pizza Co.*, No. CV-19-37-GF-BMM, 2019 WL 13218717, at *1 (D. Mont. Oct. 16, 2019). The movant bears the burden to show that the "transferee division provides a more appropriate forum," and "[c]ourts possess broad discretion to transfer cases." *Id.* If the court determines that the plaintiff—or in this case intervenor-defendant raising a crossclaim—"could have brought the action in the proposed transferee division," then "the district court must make an individualized, case-specific, analysis of convenience and fairness to the parties and witnesses, and an assessment of the interests of justice." *Id.* at *2.

---

[4] The *Garcia* case is currently scheduled for trial a month after this case. The month prior to trial is a busy time for litigants, who are usually racing to meet pretrial deadlines and prepare their case for trial. Given the possibility that the *Garcia* matter will become moot as a result of the adjudication of this case, it may benefit the parties and the Court for that matter to be placed in abeyance pending the resolution of this case, thus pausing the need for the parties to engage in work that is likely to prove unnecessary.

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM

8

Here, fairness and the interests of justice support transferring Intervenors' crossclaim and consolidating it, pursuant to LCR 42, with the *Garcia* case. The case involves the same claim, the same parties, and the same counsel. Indeed given that their lawyer *is the plaintiff's lawyer in the* Garcia *case*, they could have simply filed an amended complaint adding themselves as plaintiffs in that case. The fact that they did not do that suggests that their motive was to inject confusion and disruption to *this* case, and not a genuine need to raise their claim in this matter. Transferring the crossclaim would avoid injecting uncertainty over whether a three-judge court could even exercise jurisdiction over this case, would avoid the delay always attendant to three-judge court proceedings, and would permit the constitutional claims to be separated and held in abeyance pending the resolution of Plaintiffs' VRA claim—a claim whose resolution is a necessary predicate for whether the constitutional claim can even proceed.

Moreover, transferring the crossclaim and consolidating it with the *Garcia* case would adhere to the first-to-file rule. "The first-to-file rule was developed to 'serve[ ] the purpose of promoting efficiency well and should not be disregarded lightly.'" *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991). The rule is one of "federal comity" that "allows a district court to transfer, stay, or dismiss an action if a case with substantially similar issues and parties was previously filed in another district court." *Samson v. United HealthCare Servs., Inc.*, No. C19-0175JLR, 2020 WL 3971390, at *3 (W.D. Wash. July 14, 2020). The *Garcia* case was the first filed, involves the same exact claim, and the same counsel. The first-to-file rule would seem at its apex when the same lawyer filed the first and the second suits in a patent display of gamesmanship.

The Court should bifurcate Intervenors' crossclaim, transfer it and consolidate it with the *Garcia* case. After doing so, it should hold the *Garcia* proceedings in abeyance pending a decision in this case on Plaintiffs' VRA claim.

**II.       Alternatively, the Court should strike or dismiss Plaintiffs' crossclaim.**

Alternatively, the Court should strike or dismiss Plaintiffs' crossclaim. The Court has the discretion to strike any pleading raising a "redundant" matter. *See* Fed. R. Civ. P. 12(f). The crossclaim is redundant of the *Garcia* case. Moreover, when a party raises a claim that duplicates a claim already raises in a different proceeding—as is the case here—the Court has the discretion to dismiss the claim. *See, e.g.*, *Samson*, 2020 WL 3971390, at *3. Dismissing the crossclaim would not prejudice Intervenors because they can seek leave to amend to add themselves as plaintiffs in the *Garcia* case. Moreover, dismissal is likewise appropriate under Rule 12(b)(1) because Intervenors have not alleged facts sufficient to support standing to raise a racial gerrymandering claim.

First, Mr. Ybarra does not even reside in LD 15. As the Supreme Court has emphasized, the injuries caused by an alleged racial gerrymander are "personal" and "include[] being 'personally subject to [a] racial classification' . . . as well as being represented by a legislator who believes his 'primary obligation is to represent only the members' of a particular racial group." *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015) ("*ALBC*") (quoting *Bush v. Vera*, 517 U.S. 952, 957 (1996) (first bracket added). These injuries "directly threaten a voter who lives in the *district* attacked. But they do not so keenly threaten a voter who lives elsewhere in the State. Indeed, the latter voter normally lacks standing to pursue a racial gerrymandering claim." *Id.* (emphasis in original). Second, while Mr. Trevino resides in LD 15, the crossclaim does not allege that he has suffered any racial classification because it contains to no factual allegations regarding his race or ethnicity. *See* Am. Answer Crossclaim ¶ 32. There is thus no allegation that he has been subject to an improper racial classification—a necessary predicate for standing.

The Court may also strike Intervenors' crossclaim because they filed it as part of an untimely amended answer without leave of the Court to do so. Rule 15(a) allows a party to amend a responsive pleading "once as a matter of course within" within "21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1)(B). All other amendments require "the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Local Rules further contemplate either request of leave or consent by other parties. *See* LCR 15 ("A party who moves for leave to amend a pleading, or who seeks to amend a pleading by stipulated motion and order[…]"). In assessing whether to grant leave to amend a pleading, a court examines five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the [party] has previously amended the [pleading]." *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) (citing *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir.2004)); *see also Calmar, Inc. v. Emson Rsch., Inc.*, 850 F. Supp. 861, 864 (C.D. Cal. 1994) (applying factors to motion for leave to amend answer).

Intervenors' crossclaim may be stricken for failure to seek or merit leave to amend. Intervenors filed and served a timely answer to Plaintiffs' amended complaint on May 27, 2022. Intervenors never amended their answer as a matter of course before the deadline of June 17, 2022, under Rule 15(a)(2), and should have sought the consent of Plaintiffs or moved for leave to file an amended answer under Rule 15. Intervenors concede in a footnote their failure to move for leave to amend and indicate that they rely on the Court's scheduling order allowing amendments until November 2, 2022. *See* Dkt. # 103 at 2 n.1. The case to which Intervenors cite is from another district court and was in the context of a particular court's exercise of discretion to allow parties to file amended pleadings without leave. *See CollegeNET, Inc. v. XAP Corp.*, No. CV-03-1229-HU, 2004 WL 1615230, at *2 (D. Or. July 14, 2004) ("Inasmuch as I allowed defendant's Amended

Answer […] to stand[…]"). In this case, Intervenors still should have filed a motion for leave to file an amended answer based on the plain language of Rule 15 and LCR 15 and because the Court did not allow for such a specific variance from the Federal or Local Rules, as it did for other rules in its original scheduling order. *See* Dkt. # 46 at 2-3. Intervenors also ignored the common practice of parties in this District Court, which involves moving for leave to amend a pleading even if amendment is sought before a court-scheduled deadline for amendments. *See Spearman Corporation Marysville Division v. Boeing Company*, No. C20-13RSM, 2022 WL 507997, at *1 (W.D. Wash. Feb. 18, 2022) (striking *sua sponte* plaintiffs' amended complaint filed without leave on the Court's deadline for amended pleadings); *see also Sowa v. Ring & Pinion Serv. Inc.*, No. 221CV00459RAJBAT, 2021 WL 2916667, at *1 (W.D. Wash. July 12, 2021) (allowing amended complaint when plaintiffs filed motion for leave to amend after deadline to amend as of right but before scheduling order was entered).

   The factors for assessing the propriety of leave to amend weigh against Intervenors if their answer's footnote is to be treated as seeking leave. *See Desertrain*, 754 F.3d at 1154. As discussed above, granting leave to add the crossclaim would prejudice Plaintiffs. *See supra,* at 5. Undue delay weighs against granting leave to amend; Intervenors have known about the alleged basis for their crossclaim since before filing their motion to intervene and original answer and waited five months to seek to add the claim. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 767 (9th Cir. 2015) (denying motion for leave to amend for delay and prejudice where party knew of argument long before motion); *see also Nat'l Prod. Inc. v. Innovative Intelligent Prod. LLC*, No. 2:20-CV-00428-DGE, 2022 WL 579339, at *3 (W.D. Wash. Feb. 25, 2022) (delay weighed against movant where movant "knew or should have known of the facts and theories underlying" defense it sought to add). Intervenors filed this crossclaim in bad faith considering their repeated statements that

they sought not to delay this litigation. *See* Dkt. # 57.  Intervenors requested amendment is futile because "there [is] no need to prolong this litigation by permitting" the crossclaim because Plaintiffs' success would preclude it, as discussed above. *See Nat'l Prod. Inc.*, 2022 WL 579339, at *3.

Intervenors should be denied leave to amend their answer to add a crossclaim.

## CONCLUSION

For the foregoing reasons, the Court should bifurcate the crossclaim, transfer it and consolidate it with the *Garcia* case. The *Garcia* case should then be held in abeyance pending a decision on Plaintiffs' VRA claim. Alternatively, the Court should strike or dismiss Plaintiffs' crossclaim.

Dated: November 10, 2022

By: */s/ Edwardo Morfin*

| | |
|---|---|
| Chad W. Dunn* | Edwardo Morfin |
| Sonni Waknin* | WSBA No. 47831 |
| UCLA Voting Rights Project | Morfin Law Firm, PLLC |
| 3250 Public Affairs Building | 2602 N. Proctor Street, Suite 205 |
| Los Angeles, CA 90095 | Tacoma, WA 98407 |
| Telephone: 310-400-6019 | Telephone: 509-380-9999 |
| Chad@uclavrp.org | |
| Sonni@uclavrp.org | Annabelle E. Harless* |
| | Campaign Legal Center |
| Mark P. Gaber* | 55 W. Monroe St., Ste. 1925 |
| Simone Leeper* | Chicago, IL 60603 |
| Aseem Mulji* | aharless@campaignlegal.org |
| Campaign Legal Center | |
| 1101 14th St. NW, Ste. 400 | Thomas A. Saenz* |
| Washington, DC 20005 | Ernest Herrera* |
| mgaber@campaignlegal.org | Leticia M. Saucedo* |
| sleeper@campaignlegal.org | Deylin Thrift-Viveros* |
| amulji@campaignlegal.org | Mexican American Legal Defense and Educational Fund |

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM

13

*Admitted pro hac vice

*Counsel for Plaintiffs*

643 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Telephone: (213) 629-2512
tsaenz@maldef.org
eherrera@maldef.org
lsaucedo@maldef.org
dthrift-viveros@maldef.org

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM

14

**CERTIFICATE OF SERVICE**

I certify that all counsel of record were served a copy of the foregoing this 10th day of November, 2022 via the Court's CM/ECF system.

*/s/ Edwardo Morfin*
Edwardo Morfin
WSBA No. 47831
Morfin Law Firm, PLLC
2602 N. Proctor Street, Suite 205
Tacoma, WA 98407
Telephone: 509-380-9999

PLAINTIFFS' MOTION TO BIFURCATE
AND TRANSFER, STRIKE, OR DISMISS
INTERVENORS' CROSSCLAIM                              15