The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

SUSAN SOTO PALMER et al.,

    *Plaintiffs*,

  v.

STEVEN HOBBS, in his official capacity as Secretary of State of Washington, et al.,

    *Defendants*,

  and

JOSE TREVINO et al.,

    *Intervenor-Defendants*.

Case No.: 3:22-cv-5035-RSL

INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PROCEEDINGS

NOTE ON MOTION CALENDAR:

November 24, 2023

## I.    RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 26, 33 and 34, Intervenor-Defendants Jose A. Trevino, Ismael G. Campos, and Alex Ybarra respectfully move the Court to stay all proceedings pending resolution of *Garcia v. Hobbs*, No. 23-467 (jurisdictional statement filed Oct. 31, 2023), and the related *Trevino v. Soto Palmer*, No. 23-484 (petition for cert. before judgment filed Nov. 7, 2023), both of which are currently pending in the Supreme Court.[1] The State and Plaintiffs oppose this motion and have filed responses; the Secretary of State takes no position.

---

[1] The Supreme Court granted a partial extension for the State's response in *Garcia*. While the State had asked for a 60-day extension, the Court ordered that Responses are to be filed December 27, 2023. On November 21, 2023, the Supreme Court distributed the petition for certiorari in *Trevino* and the motion to intervene in *Garcia* for consideration at the December 8, 2023 conference. *See* Dkt. Entry of Nov. 21, 2023, No. 23-484; Dkt. Entry of Nov. 21, 2023, No. 23-467.

## II.   ARGUMENT

This stay motion is predicated on Intervenor-Defendants' high likelihood of success on appeal. They are likely to show that LD-15 does not violate Section 2 and, accordingly, secure vacatur of the permanent injunction. Doing so will eliminate the basis for the remedial proceedings scheduled to begin in December, which will, if they proceed as planned, further sort the Yakima Valley electorate (including Intervenor-Defendants) on the basis of race. Because this type of sorting violates the Fourteenth Amendment, it will irreparably harm the Intervenor-Defendants if the proceedings are not stayed. For that reason, among others, Intervenor-Defendants' request for a stay should be granted.

"When deciding whether to grant a stay pending appeal, a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Duncan v. Bonta*, 83 F.4th 803 (9th Cir. 2023) (published slip op. at 4–5) (en banc) (quoting *Nken v. Holder*, 556 U.S. 418, 425–26 (2009)). Likelihood of success on the merits and irreparable injury are the "most critical" factors. *Nken*, 556 U.S. at 434.

### A.   Intervenor-Defendants will likely succeed on the merits of their appeal.

Intervenor-Defendants are likely to succeed on the merits for the reasons stated in their emergency motion for a stay. First, the Ninth Circuit is likely to reverse the judgment and vacate the permanent injunction on any one of several bases, including: the ultimate finding of a Section 2 violation for a district where a Hispanic woman won by thirty-five points in 2022 with demonstrated substantial support from Hispanic voters; the impossibility of creating a map that is designed to elect a Democrat to remedy that alleged violation for the same reasons; the finding that a majority-Hispanic citizen voting age population with equal access to the polls does not have the opportunity to elect a candidate of choice; the failure to engage in a correct and sufficient compactness inquiry; and the failure to account for Section 2's racial causation requirement when the driving force in voting is partisan labels. And even if the Ninth Circuit disagreed with

INTERVENOR-DEFENDANTS' REPLY
IN SUPPORT OF EMERGENCY
MOTION TO STAY PROCEEDINGS
NO. 3:22-cv-5035-RSL

2

**Chalmers, Adams, Backer & Kaufman, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 207-3920

Intervenor-Defendants on every single one of those issues, there remains "a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant certiorari" and reverse. *Hollingsworth*, 558 U.S. at 190.

**B.     Unconstitutional racial sorting of Intervenor-Defendants is imminent.**

As the State notes, the Supreme Court permits *some* use of race in remedial mapmaking in *Allen v. Milligan*, 599 U.S. 1, 32–33 (2023). Dkt. # 236 at p. 3. And it has long "assume[d], without deciding, that the State's interest in complying with the Voting Rights Act" can qualify as "compelling." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 193 (2017). Even so, undisturbed precedent mandates that if a State *does* sort citizens into different voting districts on the basis of race, it must have "extraordinary justification" to do so. *Miller v. Johnson*, 515 U.S. 900, 911 (1995). "[A]ll 'racial classifications, however compelling their goals,' [a]re 'dangerous,'" thus all "race-based governmental action" is subject to strict scrutiny. *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 143 S. Ct. 2141, 2165 (2023) (quoting *Grutter v. Bollinger*, 539 U.S. 306, 341 (2003)) (emphasis added). Indeed, "[d]istinctions between citizens solely because of their ancestry are by their very nature odious to a free people whose institutions are founded upon the doctrine of equality." *Id*. at 2162 (quoting *Rice v. Cayetano*, 528 U.S. 495, 517 (2000) (quoting *Hirabayashi v. United States*, 320 U.S. 81, 100 (1943))). The "core purpose" of the Equal Protection Clause remains "do[ing] away with all governmentally imposed discrimination based on race." *Id.* at 2161 (quoting *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984)). It is, after all, "a sordid business, this divvying us up by race." *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 511 (2006) (Roberts, C.J., concurring). And the Supreme Court has been clear for decades: Racial classification in redistricting causes a "fundamental injury" to the individual rights of a person. *Shaw v. Hunt*, 517 U.S. 899, 908 (1996). Under the *Shaw II* reasoning, racial sorting causes an irreparable injury, *even if* it is justified. *Id*.

Unconstitutional racial sorting is undeniably irreparable harm, as Intervenor-Defendants have repeatedly explained. *See* Dkt. No. 57 at p. 6–7; Dkt. No. 232 at p. 11. At this point, Intervenor-Defendants will (starting on December 1) be subjected to a map-drawing process that

will not just "take into account" race—it will necessarily and inexorably fixate on particular racial targets that far exceeds what the Equal Protection Clause permits. That is because the Court, given its finding that a Section 2 violation occurred, has ordered that a majority-minority district be drawn in the Yakima Valley that performs better for the Hispanic population's historical candidates of choice (Democrats). *See Perry*, 548 U.S. at 517 (Scalia, J., concurring in judgment in part and dissenting in part) ("[W]hen a legislature intentionally creates a majority-minority district, race is necessarily its predominant motivation and strict scrutiny is therefore triggered."). Compliance with that order will require the map drawers to put some Hispanics here, and others there, to achieve the desired percentage targets. No one disputes that this is court-ordered racial targeting.

To underscore: The goal of this process is to redraw a majority Hispanic CVAP map to include a *greater* percentage of Hispanic CVAP. And just like with the original map, this remedy is *not* justified by compliance with the VRA, as Intervenor-Defendants are likely to show on appeal. Therefore, any racial sorting that occurs in December will be unjustified and unconstitutional, thus irreparably harming Trevino, Campos, and Ybarra.

Trevino lives in current LD-15 and will therefore be among those sorted on the basis of race. But Campos and Ybarra, as Hispanic voters in neighboring districts, are likely to be subjected to it as well in the same process. That is how map drawing operates. Intentionally increasing Hispanic CVAP in one district will necessarily involve moving in Hispanic voters from other neighboring districts because they are Hispanic.

For the reasons stated above, Intervenor-Defendants are likely to show that the Section 2 violation finding was erroneous. That reversal will eliminate the need for racial sorting in the imminent remedial phase. More basically, *Shaw II* stated that such racial sorting constitutes a "fundamental injury" to the individual, justified or not. 517 U.S. at 908.

Therefore, Intervenor-Defendants face irreparable harm now.

INTERVENOR-DEFENDANTS' REPLY
IN SUPPORT OF EMERGENCY
MOTION TO STAY PROCEEDINGS
NO. 3:22-cv-5035-RSL

4

Chalmers, Adams, Backer & Kaufman, LLC
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 207-3920

**C.     Appellate intervenor-defendant standing exists.**

To the extent it matters at this stage, Intervenor-Defendants have standing to appeal, for at least two reasons.

First, Rep. Ybarra continues to have an interest in the line-drawing of districts that include his own. Specifically, he has an interest in knowing precisely which voters will be in his district as he runs for reelection, an interest that remains live through the remedial process and will exist until the ultimate disposition of this case. *See League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) ("[T]he contours of the maps affect the Congressmen directly and substantially by determining which constituents the Congressmen must court for votes and represent in the legislature."). Additionally, the remedial process has the potential to make Rep. Ybarra's reelection campaign more difficult and costly. *See Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1956 (2019) (leaving undecided whether those harms, which are "suffered by individual legislators or candidates," are cognizable). For these reasons, Rep. Ybarra, as an individual legislator, has standing to defend his "own institutional position." *See Newdow v. United States Cong.*, 313 F.3d 495, 498–99 (9th Cir. 2002).

Second, Trevino and Campos incorporate the above arguments regarding the Fourteenth Amendment, concerns that give them both a continuing stake in this litigation.

### III.     CONCLUSION

Because Intervenor-Defendants are likely to win on appeal, either at the Ninth Circuit or at the Supreme Court, and because the *Garcia* appeal could render all this meaningless, the Court should stay this case pending the resolution of the related appeals.

INTERVENOR-DEFENDANTS' REPLY
IN SUPPORT OF EMERGENCY
MOTION TO STAY PROCEEDINGS
NO. 3:22-cv-5035-RSL

5

**Chalmers, Adams, Backer & Kaufman, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 207-3920

DATED this 22nd day of November, 2023.

Respectfully submitted,

*s/ Andrew R. Stokesbary*
Andrew R. Stokesbary, WSBA No. 46097
CHALMERS, ADAMS, BACKER & KAUFMAN LLC
701 Fifth Avenue, Suite 4200
Seattle, WA 98104
T: (206) 813-9322
dstokesbary@chalmersadams.com

Jason B. Torchinsky (admitted pro hac vice)
Phillip M Gordon (admitted pro hac vice)
Andrew B. Pardue (admitted pro hac vice)
Caleb Acker (admitted pro hac vice)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
T: (540) 341-8808
jtorchinsky@holtzmanvogel.com
pgordon@holtzmanvogel.com
apardue@holtzmanvogel.com
cacker@holtzmanvogel.com

Dallin B. Holt (admitted pro hac vice)
Brennan A.R. Bowen (admitted pro hac vice)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
Esplanade Tower IV
2575 East Camelback Rd
Suite 860
Phoenix, AZ 85016
T: (540) 341-8808
dholt@holtzmanvogel.com
bbowen@holtzmanvogel.com

*Counsel for Intervenor-Defendants*

I certify that this memorandum contains 1,540 words, in compliance with the Local Civil Rules.

INTERVENOR-DEFENDANTS' REPLY
IN SUPPORT OF EMERGENCY
MOTION TO STAY PROCEEDINGS
NO. 3:22-cv-5035-RSL

6

**Chalmers, Adams, Backer & Kaufman, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 207-3920

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Western District of Washington through the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 22nd day of November, 2023.

                                                Respectfully submitted,

                                                *s/ Andrew R. Stokesbary*
                                                Andrew R. Stokesbary, WSBA No. 46097

                                               *Counsel for Intervenor-Defendants*

INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PROCEEDINGS
NO. 3:22-cv-5035-RSL

7

**Chalmers, Adams, Backer & Kaufman, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 207-3920