The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN SOTO PALMER, et. al., | Case No.: 3:22-cv-05035-RSL |
| *Plaintiffs*, | Judge: Robert S. Lasnik |
| v. | **PLAINTIFFS' BRIEF IN SUPPORT OF REMEDIAL PROPOSALS** |
| STEVEN HOBBS, et. al., | |
| *Defendants*, and | |
| JOSE TREVINO, ISMAEL CAMPOS, and ALEX YBARRA, | |
| *Intervenor-Defendants*. | |

## I. INTRODUCTION

On October 4, 2023, this Court ordered the parties to "meet and confer with the goal of reaching a consensus on a legislative district map" that would remedy the dilution of Latino voting strength under Section 2 of the Voting Rights Act (VRA) arising from the configuration of LD 15. Order at 2, Dkt. #230. The parties met on November 16, 2023, but failed to reach a consensus on a remedial map. Plaintiffs now respectfully submit five proposed maps that remedy the VRA violation for Latino voters in the Yakima Valley region and provide all voters in the region equal

Case 3:22-cv-05035-RSL   Document 245   Filed 12/01/23   Page 2 of 9

electoral opportunity. Each proposal is a complete and comprehensive remedy to Plaintiffs' Section 2 harms that aligns with both traditional redistricting principles and federal law.

## II. LEGAL STANDARD

To remedy the Section 2 violation in the Yakima Valley region, the Court must order the adoption of a remedial plan in which Latino voters possess "real electoral opportunity." *See*, *e.g.*, *League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 428 (2006). The Court should "exercise its traditional equitable powers to fashion the relief so that it *completely* remedies the prior dilution of minority voting strength and *fully* provides equal opportunity for minority citizens to participate and to elect candidates of their choice." *Ketchum v. Byrne*, 740 F.2d 1398, 1412 (7th Cir. 1984) (quoting S. Rep. No. 97-417, at 31) (emphasis added); *see also Gomez v. City of Watsonville,* 863 F.2d 1407, 1419 (9th Cir. 1988) ("the district court has broad equitable powers to fashion relief which will remedy the Section 2 violation completely"); *McGhee v. Granville Cnty., N.C.*, 860 F.2d 110, 118 (4th Cir. 1988) ("If a vote dilution violation is established, the appropriate remedy is to restructure the districting system to eradicate, to the maximum extent possible *by that means*, the dilution proximately caused by that system.") (emphasis in original); *U.S. v. Dallas Cnty. Comm'n*, 850 F.2d 1433, 1438 (11th Cir. 1988).

The Court ought to conduct a fact-based analysis of the district's demographics, racial polarization, and past electoral performance to ensure the remedial district configuration will, in fact, provide the minority community with an equal opportunity to elect candidates of its choice. See *League of United Latin Am. Citizens*, 548 U.S. at 428–29 (considering whether a district was "an effective opportunity district" by assessing a district's Latino citizen voting age population and past electoral performance); *Milligan v. Merrill*, 582 F. Supp. 3d 924, 936 (N.D. Ala. 2022), aff'd sub nom. *Allen v. Milligan*, 599 U.S. 1 (2023) (ordering that a remedial plan create "either an

REMEDIAL PROPOSALS                               2

additional majority-Black congressional district, or an additional district in which Black voters otherwise have an opportunity to elect a representative of their choice."). Plaintiffs demonstrated that it is possible to draw a district with over 50% Latino Citizen Voting Age Population ("CVAP") to prove *liability*, but once a violation has been shown, a remedial map imposed by a Court need not include "majority-minority" districts to achieve Section 2 compliance. Instead, as noted above, the remedial inquiry turns on a functional analysis of a district's electoral performance for Latino voters, not an arbitrary demographic threshold. *See Bartlett v. Strickland*, 556 U.S. 1, 23 (2009) (stating that "§ 2 allows States to choose their own method of complying with the Voting Rights Act, and we have said that may include drawing crossover districts") (internal citations omitted); *Cooper v. Harris*, 137 S. Ct. 1455, 1472 (2017).

When adopting a remedial district, this Court must consider traditional redistricting principles as well as the policies underlying the current redistricting plan, but those considerations ultimately must subordinate to compliance with the Constitution and the Voting Rights Act. *See Arizona v. Inter Tribal Council of Ariz. Inc.*, 133 S. Ct. 2247, 2256 (2013) ("[Federal legislation] so far as it extends and conflicts with the regulations of the State, necessarily supersedes them." (citation omitted)); *Large v. Fremont County*, 670 F.3d 1133, 1145 (10th Cir. 2012) ("In remedial situations under Section 2 where state laws are necessarily abrogated, the Supremacy Clause appropriately works to suspend those laws because they are an unavoidable obstacle to the vindication of the federal right." (emphasis in original)).

### III. PLAINTIFFS' REMEDIAL PROPOSALS

Plaintiffs present five proposed remedial plans, each of which comply with traditional redistricting principles including population equality, compactness, contiguity, respect for political subdivisions, and preservation of communities of interest. Ex. 1, Oskooii Decl. at 4-11; RCW

29A.76.010(4). Each of the remedial proposals was drafted by Plaintiffs' remedial mapping expert, Dr. Kassra Oskooii, without consideration of the racial or partisan composition of the districts. *Id*. at 4. Each plan would remedy the dilution of Latino voting strength in the Yakima Valley region by creating a district in which Latino voters have an equal opportunity to elect candidates of their choice to the state legislature despite high degrees of racially polarized voting. Ex. 2, Collingwood Decl. at 1. Consistent with the Court's instruction to "keep[] in mind the social, economic, and historical conditions discussed in the Memorandum of Decision," Order at 2, Dkt. #230, Plaintiffs' proposed remedial districts are each labeled as LD 14 wherein elections for state senate align with the higher turnout gubernatorial and presidential elections. In doing so, none of Plaintiffs' proposed plans pair any Senators who would be up for election in the off-year of 2026. Because Latino voter turnout is less depressed in presidential elections than in off-year elections, Mem. of Decision at 17, Dkt. #218, the creation of the remedial district as LD 14 will significantly contribute to ensuring the region's Latinos will have "real electoral opportunity" as required by Section 2. *League of United Latin Am. Citizens*, 548 U.S. at 428.

While any of Plaintiffs' proposed plans would remedy the VRA violation, Plaintiffs' preference is for the Court to adopt a proposed remedial district configuration which unites populations in Yakima, Pasco, and various smaller population centers bridging them, which "form a community of interest based on more than just race." Mem. of Decision at 10, Dkt. #218.

*Plaintiffs' Remedial Proposal 1*

As Dr. Oskoii explains in his attached declaration, Remedial Proposal 1 contains a configuration of LD 14 that unites the community of interest in the Yakima Valley region, including both the East Yakima and Pasco community centers and smaller communities in the Lower Yakima Valley like Wapato, Toppenish, Sunnyside, and Grandview. Plaintiffs' Remedial

Proposal 1, like all of Plaintiffs' remedial proposals, keeps the Yakama Nation Reservation intact in one legislative district. LD 14 in Plaintiffs' Remedial Proposal 1 also contains some of the Yakama Nation trust lands.

Dr. Collingwood separately assessed whether Plaintiffs' Remedial Proposal 1 would perform to allow Latino voters an equal opportunity to elect their candidates of choice. LD 14 in Remedial Proposal 1 has a Latino CVAP of 51.65%. Ex. 2, Collingwood Decl. at 3. Importantly, Remedial Proposal 1 provides Latino voters in the Yakima Valley region with an equal opportunity to elect candidates of choice to the state legislature across a range of electoral conditions. The performance analysis conducted by Dr. Collingwood shows that in nine of the nine elections considered, the Latino-preferred candidate would win in LD14 in Remedial Proposal 1. Ex. 2, Collingwood Decl. at 4.

### *Plaintiffs' Remedial Proposal 2*

LD 14 in Remedial Proposal 2 has an identical configuration to LD 14 in Plaintiffs' Remedial Proposal 1 but offers an alternative configuration of the legislative districts *surrounding* LD 14.

### *Plaintiffs' Remedial Proposal 3*

Plaintiffs' Remedial Proposal 3, like 1 and 2, contains a configuration of LD 14 which joins communities of interest in the Yakima Valley region, including both East Yakima and Pasco community centers as well as communities in the Lower Yakima Valley like Wapato, Toppenish, Sunnyside, and Grandview. Plaintiffs' Remedial Proposal 3 also combines the Yakama Nation Reservation and all of the Yakama Nation trust lands and fishing villages in LD 14.

Dr. Collingwood separately assessed whether Plaintiffs' Remedial Proposal 3 would perform to allow Latino voters an equal opportunity to elect their candidates of choice. LD 14 in

Remedial Proposal 3 has a Latino CVAP of 50.14%. Ex. 2, Collingwood Decl. at 3. Remedial Proposal 3 provides Latino voters in the Yakima Valley region with an equal opportunity to elect candidates of their choice to the state legislature across a range of electoral conditions. The performance analysis conducted by Dr. Collingwood shows that in nine of the nine elections considered, the Latino-preferred candidate would win in LD 14 in Remedial Proposal 3. Ex. 2, Collingwood Decl. at 4.

### *Plaintiffs' Remedial Proposal 4*

LD 14 in Remedial Proposal 4 has an identical configuration to LD 14 in Plaintiffs' Remedial Proposal 3 but offers an alternative configuration of the legislative districts *surrounding* LD 14.

### *Plaintiffs' Remedial Proposal 5*

Remedial Proposal 5 contains a configuration of LD 14 which does not include Pasco in LD 14. Remedial Proposal 5 includes all of the Yakama Nation Reservation in LD 14 but not the off-reservation trust lands or fishing villages. While Remedial Proposal 5 is not preferred by Plaintiffs, it would nonetheless remedy the Section 2 violation by creating an effective opportunity district for Latino voters, should this Court choose to do so without uniting the full Yakima Valley region community of interest, including both Yakima and Pasco Latinos, in one legislative district.

Dr. Collingwood separately assessed whether Plaintiffs' Remedial Proposal 5 would perform to allow Latino voters an equal opportunity to elect their candidates of choice. LD 14 in Remedial Proposal 5 has a Latino CVAP of 47%. Ex. 2, Collingwood Decl. at 3. Remedial Proposal 5 provides Latino voters in the Yakima Valley region with an equal opportunity to elect candidates of their choice to the state legislature across a range of electoral conditions. The performance analysis conducted by Dr. Collingwood shows that in nine of the nine elections

considered, the Latino-preferred candidate would win in LD 14 in Remedial Proposal 5. Ex. 2, Collingwood Decl. at 4.

### IV. CONCLUSION

Plaintiffs respectfully urge this Court to adopt one of Plaintiffs' five proposed remedial plans, which fully and effectively remedy the Section 2 violation in the region, with a preference for Remedial Plans 1-4.

Dated: December 1, 2023

Edwardo Morfin
WSBA No. 47831
MORFIN LAW FIRM, PLLC
2602 N. Proctor Street, Suite 205
Tacoma, WA 98407
Telephone: 509-380-9999

Chad W. Dunn*
Sonni Waknin*
UCLA VOTING RIGHTS PROJECT
3250 Public Affairs Building
Los Angeles, CA 90095
Telephone: 310-400-6019
Chad@uclavrp.org
Sonni@uclavrp.org

Thomas A. Saenz*
Ernest Herrera*
Leticia M. Saucedo*
Erika Cervantes*
MEXICAN AMERICAN LEGAL
DEFENSE AND EDUCATIONAL
FUND
643 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Telephone: (213) 629-2512
tsaenz@maldef.org

Respectfully submitted,

By: */s/ Annabelle H. Harless*
Mark P. Gaber*
Simone Leeper*
Aseem Mulji*
Benjamin Phillips*
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
mgaber@campaignlegal.org
sleeper@campaignlegal.org
amulji@campaignlegal.org
bphillips@campaignlegal.org

Annabelle E. Harless*
CAMPAIGN LEGAL CENTER
55 W. Monroe St., Ste. 1925
Chicago, IL 60603
aharless@campaignlegal.org

*Counsel for Plaintiffs*
*Admitted pro hac vice

eherrera@maldef.org
lsaucedo@maldef.org
ecervantes@maldef.org

**CERTIFICATE OF SERVICE**

I certify that all counsel of record were served a copy of the foregoing this 1st day of December 2023, via the Court's CM/ECF system.

*/s/ Annabelle E. Harless*
Annabelle E. Harless
*Counsel for Plaintiffs*

PLAINTIFFS' BRIEF IN SUPPORT OF
REMEDIAL PROPOSALS                                9