IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **SUSAN SOTO PALMER, et al.**, | Case No. 3:22-CV-5035-RSL |
| Plaintiffs, | |
| v. | |
| **STEVEN HOBBS, in his official capacity as Secretary of State of Washington, and the STATE OF WASHINGTON**, | |
| Defendants, | |
| and, | |
| **JOSE TREVINO, ISMAEL G. CAMPOS, and State Representative ALEX YBARRA**, | |
| Intervenor-Defendants. | |

**DECLARATION OF SEAN P. TRENDE, Ph.D.**

1. Toward the conclusion of the March 8, 2024 hearing in this case, the Court requested that I address certain concerns that the plaintiffs' experts had raised with respect to the map described in my February 23, 2024 report.

2. I am submitting, along with this declaration, an updated map that addresses these concerns.

3. To address the contiguity issue raised by Plaintiffs, I moved the East Wahluke precinct in Grant County from District 13 to District 15. This results in a shift of 775 residents from District 13 to District 15. This also adds the Vernita Bridge along State Route 24 to District 15, providing a bridge across the Columbia River and addressing the contiguity issue.

4. Note that this does not add a county split. It simply reintroduces one that had been present in the Enacted Map. This precinct was originally in District 15 in the Enacted Map; I moved it to District 13 in the Feb. 23 map only because it made it possible to *remove* a county split created by the Enacted Map. By moving it back to District 15, I return to the same number of county splits as the original map.

5. I then have to re-balance populations to compensate for the loss of 775 residents from District 13 and accompanying gain in population in District 15. I therefore shift 757 residents from District 14 to District 13 by shifting a part of Precinct 4402 in Yakima County.

6. I then shift Precinct 162 in the City of Yakima and part of Precinct 150 in the City of Yakima to District 14 from District 15, moving a total of 689 residents. I also am now able to remove the odd-looking appendage at the bottom of District 15 by shifting Precinct 3105 in Yakima County into District 14, along with the empty precinct 300.

7. I did not address the split of the Yakama Nation Reservation in Union Gap that Dr. Oskooii identified, because Union Gap is also intact in the Enacted Plan, and is

1

separated from the Yakama Nation Reservation. I understood the Yakama Nation's preference as being to hew to the configuration of District 14 in the Enacted Map as much as possible. If the Court would like this changed, it is a relatively minor matter of shifting these precincts into District 14, and then adding some blocks from District 14 to District 15 in the City of Yakima.

8. Also, because the Court did not order it, I did not renumber any districts. It would be trivial to order District 15 renumbered to District 14 and vice-versa.

9. An image of the map centered on the three affected districts follows:

2

Figure 1: Intervenor-Defendants' Map



10. District 13 now has 10 more residents than the ideal population. District 15 has 29 fewer residents than the ideal population. District 14 has 2 fewer residents than the ideal population. This is well within the population deviations found in the Enacted Map.

11. District 15's 2021 Hispanic CVAP remains at 51.1%.

12. The politics of District 15 are functionally unchanged. The Democratic candidate

for Treasurer in 2020 received 50.5% of the vote under the Feb. 23 version of District 15; that candidate received 50.5% of the vote in this iteration. President Biden received 52.8% of the vote under the Feb. 23 version of District 15; he received 52.8% of the vote under this version. The Democratic candidates for Attorney General and Governor in 2020 likewise received the same vote share in both iterations of the district. Hillary Clinton received 50.1% of the vote (to Donald Trump's 44%) under this version of District 15, compared to a 50.2% to 44% margin under the previous version.

13. This map splits 277 precincts, compared to 284 split precincts under the Enacted Map.

14. All overall compactness of these districts are improved from the map presented to the Court. District 13 had a Reock Score of 0.289 and a Polsby-Popper of 0.265. The Reock score is now 0.2778 and the Polsby-Popper is 0.2419. District 14 had a Reock Score of 0.5165 and a Polsby-Popper of 0.3452. The Reock is now 0.5218 and the Polsby-Popper is 0.3476. District 15 had a Reock Score of 0.2151 and a Polsby-Popper of 0.145. Those scores are now 0.2377 and 0.1755.

15. In short, it is possible to comply with this Court's request of providing a functionally contiguous Remedial District that still performs as well as the District provided in my Feb. 23 report. It provides an option for this Court to order the creation of a district that will allow Hispanic residents of the region to elect their candidate of choice, and that addresses the concerns of the Yakama Nation without the disruptive second- and third-order effects of some of the other alternatives provided.

4

I declare under penalty of perjury under the laws of the State of Ohio that the foregoing is true and correct to the best of my knowledge and belief. Executed on 13 March, 2024 in Delaware, Ohio.


*Sean Trende*
_____

Sean P. Trende