The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

SUSAN SOTO PALMER et al.,

　　　　　　*Plaintiffs*,

　　v.

STEVEN HOBBS, in his official capacity as Secretary of State of Washington, et al.,

　　　　　　*Defendants*,

　　and

JOSE TREVINO et al.,

　　　　　　*Intervenor-Defendants*.

Case No.: 3:22-cv-5035-RSL

INTERVENOR-DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B)

NOTE ON MOTION CALENDAR:
May 25, 2026

Intervenor-Defendants Jose Trevino and Alex Ybarra ("Intervenors") respectfully move under Federal Rules of Civil Procedure 60(b)(5), 60(b)(6), and 62.1 for relief from this Court's August 10, 2023 liability determination, Dkt. # 218, and March 15, 2024 remedial order, Dkt. # 290 (together, the "Redistricting Orders"), in light of the Supreme Court's April 29, 2026 decision in *Louisiana v. Callais*, Nos. 24-109 & 24-110, 608 U.S. ___ (2026). *Callais* restored the original meaning of Section 2 of the Voting Rights Act ("VRA") by confirming that race may not be used as a predominant factor considered in drawing legislative districts absent a proper statutory basis and by requiring that plaintiffs asserting a Section 2 claim satisfy additional requirements under the *Gingles* framework and that courts modify their "totality of the circumstances" inquiry.

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

1

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

In reaching its Section 2 liability finding, this Court did not require that Plaintiffs make the *Gingles* precondition showings that *Callais* instructs are constitutionally required, nor did Plaintiffs make such showings on their own. *See* Mem. Decision 6–14, Dkt. # 218. In addition, the Court's "totality of the circumstances" inquiry did not align with the methodology required under *Callais*. *See id.* at 14–28. Accordingly, neither this Court's Section 2 liability determination invalidating the prior legislative map crafted by Washington's bipartisan, independent Redistricting Commission (the "Commission") nor its subsequent remedial order imposing a new map proposed by Plaintiffs comply with *Callais*.

Because *Callais* confirms what the text of the VRA always required (and what Intervenors argued throughout this litigation), giving continued effect to the Redistricting Orders is inequitable under Rule 60(b)(5). These orders were based on an erroneous legal framework that departed from Section 2's text, and which the Supreme Court has now clarified is improper. In addition, the extraordinary circumstances created by the Supreme Court's restoration of the proper Section 2 standard warrant relief. Intervenors therefore ask this Court to: (1) grant this motion; (2) vacate both Redistricting Orders, thereby restoring the redistricting plan adopted by the Commission that properly governed state legislative elections prior to the Redistricting Orders; and (3) impose an appropriate order and such other relief to provide for legislative candidates to file and run for election under the Commission's map as soon as the 2026 primary and general election.

To the extent the Court determines that it presently lacks authority to grant this motion because of Intervenors' pending petition to the Supreme Court for writ of certiorari, Intervenors respectfully request that this Court promptly notify the Supreme Court that it would grant this motion on remand or that it "raises a substantial issue" pursuant to Rule 62.1(a). A separate motion to expedite consideration of this motion is being concurrently filed.

Counsel for Intervenors have consulted with counsel for the other parties. Counsel for Plaintiffs oppose this motion and counsel for Defendants Secretary of State Steve Hobbs and the State of Washington reserve taking a position until the motion is filed and reviewed.

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

2

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

## BACKGROUND

As this Court's earlier decision reflects, the Commission redrew the state's legislative districts in 2021 after an extensive deliberative process involving countless map iterations, numerous business meetings and public outreach events, consultation with multiple federally recognized tribes, and consideration of thousands of public comments. Mem. Decision 26 n.11. Plaintiffs challenged Legislative District 15 ("LD 15") of the Commission's 2021 map (the "Prior Map") as diluting the Latino vote in violation of Section 2 of the VRA. On August 10, 2023, following a multi-day trial, this Court ruled that LD 15 violated Section 2, concluding that "the boundaries of LD 15, in combination with the social, economic, and historical conditions in the Yakima Valley region, results in an inequality in the electoral opportunities enjoyed by white and Latino voters in the area." *Id.* at 32. In reaching this conclusion, the Court applied the framework from *Thornburg v. Gingles*, 478 U.S. 30 (1986), which the Supreme Court has now recognized departed from the statutory text in practice and corrected in *Callais*. Mem. Decision 6−9. After Defendant State of Washington declined to enact a new legislative district map, the Court then selected one of Plaintiffs' remedial maps (known as Remedial Map 3B), designed with express racial goals, and ordered Defendants State of Washington and Secretary of State Steve Hobbs to implement it with minor alterations. Order re Remedy 10−11, Dkt. # 290.

The Ninth Circuit affirmed, and on January 24, 2026, Intervenors filed a petition for a writ of certiorari with the Supreme Court challenging the constitutionality of the race-conscious Court-ordered map, which remains pending. *Trevino v. Hobbs*, No. 25-918 (filed Jan. 23, 2026). On April 29, 2026, the Supreme Court decided *Callais*, vindicating Intervenors' position and restoring the proper legal framework governing Section 2 vote-dilution claims. The Court held that "compliance with §2, as properly construed, can provide [a compelling] interest" for race-conscious redistricting but confirmed the heightened standard the statute has always demanded. *Callais*, 608 U.S. at ___ (slip op. at 2–3). The Court realigned the *Gingles* framework "with the text of §2 and constitutional principles," correcting the departure from the statutory text and constitutional principles that had taken root in lower courts. *Id.* at 29−31.

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

3

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

**LEGAL STANDARD**

Federal Rule of Civil Procedure 60(b) "enumerates specific circumstances in which a party may be relieved of the effect of a judgment." *Buck v. Davis*, 580 U.S. 100, 112 (2017).

Rule 60(b)(5) authorizes relief when, *inter alia*, "applying [a judgment] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The provision allows "a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement' detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)). Once the movant demonstrates a significant change in law or circumstances, "a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Horne*, 557 U.S. at 447 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)). The Supreme Court and Ninth Circuit have emphasized that courts must take a "flexible approach" to Rule 60(b) motions. *Rufo*, 502 U.S. at 381; *see also Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1255 (9th Cir. 1999) ("*Rufo* sets forth a general, flexible standard for all petitions brought under the equity provision of Rule 60(b)(5).").

Rule 60(b)(6) is a catchall provision permitting relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Supreme Court has noted that this provision "does not particularize the factors that justify relief," but provides "courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988) (citation omitted). "Rule 60(b)(6) is a grand reservoir of equitable power, and it affords courts the discretion and power to vacate judgments whenever such action is appropriate to accomplish justice." *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (cleaned up, citations omitted). But it should be applied "sparingly," to "prevent manifest injustice," *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (cleaned up, citation omitted), or correct a "clear error," *Gagan v. Sharar*, 376 F.3d 987, 992 (9th Cir. 2004). A change in the law may present "extraordinary circumstances" required to grant Rule 60(b)(6) relief. *E.g.*, *Phelps*, 569 F.3d at 1132−33.

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

4

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

Finally, Rule 62.1 provides a district court with a mechanism to address a Rule 60(b) motion if the court believes it lacks jurisdiction to resolve the motion due to a pending appeal: the court may issue an indicative order stating that it would grant the motion or that the motion raises a substantial issue, after which the movant may notify the appellate court and seek remand. *See generally Nat'l Grocers v. Rollins*, 157 F.4th 1143, 1155 (9th Cir. 2025).

## ARGUMENT

**I.    Intervenors Are Entitled to Relief from the Court's Order Invalidating the Prior Map**

This Court's August 10, 2023 order invalidating the Prior Map was predicated on the *Gingles* framework that the Supreme Court has now corrected after holding its application to be inconsistent with the text of Section 2 and the constitutional parameters of the Fifteenth Amendment. *See Callais*, 608 U.S. at ___ (slip op. at 26). At each step of the *Gingles* analysis, *Callais* confirms requirements rooted in the statute's text that were not met in this case. That leaves the Court's liability determination, Dkt. # 218, legally deficient under the proper reading of the VRA, incidentally the same reading for which Intervenors have consistently advocated. Moreover, together with the Court's imposition of Remedial Map 3B, that order has the prospective effect of denying Intervenors the ability to vote and run under the Prior Map and requiring them to do so under the Court-ordered remedial map. This is a continuing harm that is inequitable now that the Supreme Court has confirmed the legal foundation for this Court's Redistricting Orders was erroneous from the outset. Intervenors and the people of Washington should not have to go through yet another election with a legislative district map that does not comply with the proper reading of Section 2, and there is sufficient time to revert to the Prior Map for the 2026 primary and general elections with appropriate orders from this Court.

### A.    Enforcement of the Liability Determination Is No Longer Equitable

*Callais* constitutes a "significant change . . . in law" that renders continued enforcement of this Court's liability determination inequitable. *Horne*, 557 U.S. at 447. That decision and associated judgment have continuing prospective effect: it is the legal predicate for this Court's order imposing Remedial Map 3B currently governing Washington's legislative elections, and it

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

5

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

bars Defendant Secretary of State from reverting to and implementing the duly enacted Prior Map for 2026 and subsequent legislative elections. That predicate can no longer stand in light of *Callais*.

This is true principally because *Callais* confirmed that Section 2 liability is properly limited to situations "when the evidence supports a strong inference that the State *intentionally* drew its districts to afford minority voters less opportunity because of their race." *Compare Callais*, 608 U.S. at ___ (slip op. at 26) (emphasis added) *with* Mem. Decision 30 ("[T]he focus of the [Section 2] analysis is the impact on the impact of electoral practices on a minority, not discriminatory intent toward the minority."). The Court's liability determination cannot stand after *Callais* because the Court expressly declined to decide Plaintiffs' discriminatory intent claim and instead ruled exclusively on the basis of allegedly discriminatory results. Mem. Decision 3 ("[T]he Court need not decide plaintiffs' discriminatory intent claim."); *id.* at 17 ("Proof that . . . the boundaries of LD 15 . . . was adopted with an intent to discriminate against Latino voters is not required). But mere discriminatory results cannot sustain a Section 2 claim, as *Callais* confirms. *Callais*, 608 U.S. at ___ (slip op. at 26). Moreover, this Court's own findings affirmatively rule out Section 2 liability under the correct reading of the VRA—the Court found that the members of the Commission "tried to comply with the law as they understood it to the best of their abilities" and that their map "reflected a difficult balance of many competing factors and could be justified in any number of rational, nondiscriminatory ways." *Id.* at 24.

In addition, Plaintiffs failed to satisfy any of the *Gingles-Callais* factors in either their Amended Complaint, Dkt. # 70, or at trial in this matter.

*First*, *Callais* now forbids Plaintiffs from "us[ing] race as a districting criterion" in drawing illustrative maps. *Callais*, 608 U.S. at ___ (slip op. at 29–30). Respondents' three illustrative maps were drawn with the express purpose of unifying the purported Latino community of interest in the Yakima Valley. Pls.' Trial Br. 7, Dkt. # 214. The record does not establish—and Plaintiffs made no attempt to show—that their illustrative maps could achieve the same result without using race as a districting criterion. Under *Callais*, such maps "ha[ve] no value in proving a §2 plaintiff's case." *Callais*, 608 U.S. at ___ (slip op. at 29).

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

6

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

Nor did any of Plaintiffs' three illustrative maps "meet all of the State's legitimate districting objectives, including . . . specified political goals," another *Callais* clarification of the first *Gingles* factor. *Id.* In particular, the Commission negotiated LD 15 with a specified political goal in mind—a district that would lean slightly Republican. *See, e.g.*, Trial Tr. 476:17–477:1, Dkt # 208; Trial Tr.747:16–23, Dkt # 209; *see also* Intervenors' Trial Br. 47–48, Dkt. # 197 ("[T]he final map produced by the Commission only came about because, at the eleventh hour, Commissioners were able to consent to a 'framework' that primarily consisted of agreed-to partisan performance targets for various legislative districts. And a partisan performance target proved necessary to achieve compromise with respect to LD 15 itself—with Republican Commissioners assenting to drawing LD 15 as a majority HCVAP district in exchange for Democratic Commissioners agreeing to drawing it as a Republican-leaning district." (internal citations omitted)). "If the State's aims in drawing a map include a target partisan distribution of voters . . . or any other goal not prohibited by the Constitution," the *Gingles-Callais* framework mandates that "plaintiffs' illustrative maps must achieve these goals as well." *Callais*, 608 U.S. at ___ (slip op. at 29). However, none of Plaintiffs' three illustrative maps did so.

*Second*, *Callais* now requires that, to satisfy the second and third *Gingles* preconditions, Plaintiffs' analysis must "control[] for party affiliation," showing "that voters engage in racial bloc voting that cannot be explained by partisan affiliation." *Id.* at ___ (slip op. at 30). Though this Court found that Plaintiffs had shown "voting in the Yakima Valley region is racially polarized," Mem. Decision 11, 17, it failed to require them to "disentangl[e] race and politics" in those voting patterns, *Callais*, 608 U.S. at ___ (slip op. at 30), and indeed (incorrectly, as *Callais* now makes clear) suggested that the question of whether Latino voters' choices are on account of race or partisanship "does not inform the political cohesiveness or bloc voting analysis," Mem. Decision 13. As the Supreme Court has now made clear, "simply pointing to *inter*-party racial polarization proves nothing." *Callais*, 608 U.S. at ___ (slip op. at 30).

*Third*, *Callais* requires that the totality-of-circumstances inquiry focus on "present-day intentional racial discrimination regarding voting," and give "much less weight" to

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

7

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

"[d]iscrimination that occurred some time ago" and "present-day disparities characterized as ongoing 'effects of societal discrimination.'" *Id.* (citing *Shaw v. Hunt*, 517 U.S. 899, 909–10 (1996)). Relying on the now-curtailed "Senate Factors" framework, the decision in this case gave equal weight to a range of factors that had little or nothing to do with present-day intentional racial discrimination in voting, including two factors *Callais* explicitly instructed courts to discount (history of official discrimination and effects of discrimination more broadly). *Compare* Mem. Decision at 15−24 *with Callais*, 608 U.S. at ___ (slip op. at 30). But the decision in this case failed to identify any current evidence of present-day intentional voting discrimination.

### B.    Extraordinary Circumstances Independently Warrant Relief from the Liability Determination Under Rule 60(b)(6)

Even if the liability determination is not subject to vacatur under Rule 60(b)(5), *Callais* gives rise to "extraordinary circumstances" that independently warrant relief under Rule 60(b)(6). A change in the law may present such extraordinary circumstances. *See, e.g.*, *Phelps*, 569 F.3d at 1132–33. In evaluating whether an intervening change in law warrants Rule 60(b)(6) relief, the Ninth Circuit considers, among other factors, whether the change in law is "clearly irreconcilable" with the prior ruling, whether the party seeking reconsideration was diligent in seeking relief, whether the motion is timely, and the "circumstances of the case." *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019). These factors favor relief here.

*First*, *Callais* is clearly irreconcilable with this Court's liability determination. The Supreme Court restored Section 2 to its proper meaning by refining every element of the *Gingles* framework that had drifted from the statute's text and its constitutional mooring over "nearly forty years." *Allen v. Milligan*, 599 U.S. 1, 26 (2023) (cleaned up, citation omitted). As detailed above, this Court's liability determination not only omitted any finding of the "strong inference" of intentional discrimination that *Callais* confirms Section 2 has always demanded, but fails at each step of the properly construed *Gingles* framework as well.

*Second*, Intervenors have diligently sought relief, becoming parties to this action, vigorously litigating their interests at trial (including advocating for an application of Section 2

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

8

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

that the Supreme Court has now explicitly adopted), appealing what they believe to be this Court's erroneous Redistricting Orders, and petitioning for certiorari when the Ninth Circuit compounded the error.

*Third*, this motion is timely. *Callais* was decided on April 29, 2026, and Intervenors have brought this motion promptly—within several business days—thereafter. *See Henson*, 943 F.3d at 443 (considering timeliness of the motion relative to the intervening legal change).

*Finally*, the circumstances of this case strongly favor relief. Continued enforcement of a sweeping statewide race-based order premised on a legal framework that the Supreme Court has held to be inconsistent with the statutory text and limits of the Fifteenth Amendment would work a "manifest injustice." *Lal*, 610 F.3d at 524. The Commission's map—the product of a thorough, bipartisan, and voter-approved process—was only invalidated under an erroneous reading and application of Section 2 that the Supreme Court has now corrected. The ongoing consequences are not abstract: the liability determination displaced a democratically-enacted redistricting plan, which continues to harm Intervenors and affect the representational interests of hundreds of thousands of Washington voters. Intervenors and other Washington voters and candidates should not remain subject to a judicial override of the Commission's work that is now clear was inconsistent with both the VRA and the Constitution.

\*        \*        \*

In sum, the Court's liability determination fails at every turn to satisfy the proper Section 2 legal framework the Supreme Court articulated in *Callais*, and is therefore not equitable.

## II.    Intervenors Are Entitled to Relief from the Court's Order Imposing the Current Map

### A.    The Remedial Order Is No Longer Equitable Because It Now Lacks a Legal Basis and Is Itself Unlawful

The Court's remedial order is a classic prospective injunction directing the Secretary of State to "conduct future elections" according to Remedial Map 3B. Order re Remedy 11; *see generally Smith v. Hosemann*, 852 F. Supp. 2d 757, 762 (S.D. Miss. 2011) (judgment ordering state to use "court-drawn congressional redistricting plan in all succeeding elections" had

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

9

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

prospective application because it was "executory by its terms"). It exists solely to remedy the Section 2 violation this Court found under the *Gingles* framework without regard for its proper application directed by *Callais*. Because this Court's determination that Washington's Prior Map violated Section 2 cannot stand under *Callais*, neither can the remedy it fashioned to address the purported violation. Under Ninth Circuit precedent, "a court must modify an injunction if the law underlying it has been overruled, without consideration of equitable factors." *Planned Parenthood Monte Mar, Inc. v. Ford*, 349 F.R.D. 213, 224 (D. Nev. 2025) (citing *California by & through Becerra v. EPA*, 978 F.3d 708, 716 (9th Cir. 2020); *Agostini v. Felton*, 521 U.S. 203, 215−17 (1997)). That is plainly the case here. Continuing to enforce the injunction to use Remedial Map 3B "would be inequitable because a change in law has eliminated the basis for [it]." *Id.* at 224–25.

Moreover, *Callais* independently calls into question the court-ordered map itself. This Court openly acknowledged its race-conscious reason for selecting and imposing Remedial Map 3B—writing that "the fundamental goal of the remedial process" was to "unite the Latino community of interest in the region." Order re Remedy 6, 6 n.7. But *Callais* holds that compliance with Section 2 provides a compelling interest for race-based redistricting only when it is necessary to "create a new majority-minority district to comply with the Act." *Callais*, 608 U.S. at ___ (slip op. at 33). As demonstrated in Part I above, Plaintiffs have failed to show that the State of Washington violated Section 2 by not making a legislative district encompassing specific groups of Hispanic voters in the Yakima Valley region. Thus, Section 2 could not have *required* this Court to order a new map to create such a district. Thus, Remedial Map 3B lacks statutory justification and must be set aside. *See Callais*, 608 U.S. at ___ (slip op. at 17–18) (identifying "remediating specific, identified instances of past discrimination" as the only potentially relevant compelling interest for race-based districting).

**B.    Extraordinary Circumstances Independently Warrant Relief from the Liability Determination Under Rule 60(b)(6)**

For much the same reasons discussed in Part I.B above, *Callais* gives rise to "extraordinary circumstances" under Rule 60(b)(6) that independently warrant relief from this Court's imposition

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

10

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

of Remedial Map 3B. Maintaining a court-imposed map drawn in response to a showing that no longer satisfies Section 2, properly applied (assuming it ever did), particularly given its express consideration of race despite the lack of need to do so to comply with Section 2 and as the Supreme Court now clearly bars, would work a manifest injustice and constitutes clear error warranting correction. *See Lal*, 610 F.3d at 524; *Gagan*, 376 F.3d at 992.

**III.     The Appropriate Remedy Is Vacatur of Remedial Map 3B and Reinstatement of the Commission's Map**

As explained in Parts I and II, this Court should vacate its Redistricting Orders in light of the Supreme Court's restoration in *Callais* of the proper Section 2 framework. The appropriate—and only legally viable—remedy is to restore the legislative map adopted by the independent and bipartisan Commission—a map that resulted from an extensive and transparent process, was enacted pursuant to the Washington State Constitution, and represents the presumptively lawful exercise of the State's redistricting authority. *See Callais*, 608 U.S. at ___ (slip op. at 24) ("Redistricting constitutes a traditional domain of state legislative authority." (quoting *Alexander v. S.C. State Conf. of NAACP*, 602 U. S. 1, 7 (2024))). The Prior Map was already used without incident in the 2022 election cycle, so it will be a simple matter for local and state election officials to revert to it (and much less administratively complicated than imposing a brand-new map).[1]

In addition, because the candidacy filing window is this week (May 4−8), this Court should enter an order for this election cycle only extending the State's candidate filing period as necessary so that the voters of Washington can vote under a map duly enacted by the State, consistent with the current decisions of the Supreme Court, and free from constitutional defect. This would still leave plenty of time before the primary election on August 4 for candidates for legislative office to identify their districts and file necessary paperwork to run, and for county election administrators to restore the previous maps to their systems.

---

[1] To the extent Plaintiffs believe the Prior Map still violates Section 2 even under the now-controlling *Gingles-Callais* framework, they are certainly entitled to pursue that claim. However, this Court's record makes it extraordinarily clear that Plaintiffs have failed to make such a showing at this point in time. Therefore, the Court's liability determination cannot stand as a matter of law, and accordingly neither can its subsequent remedial order.

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

11

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

To the extent the Court determines that it presently lacks authority to grant this motion because of Intervenors' pending petition for certiorari, Intervenors respectfully request that the Court issue an indicative ruling and notify the Supreme Court that it would grant this motion on remand or that it "raises a substantial issue." Fed. R. Civ. P. 62.1(a).

DATED this 4th day of May, 2026.

Respectfully submitted,

*s/ Andrew R. Stokesbary*
Andrew R. Stokesbary, WSBA No. 46097
CHALMERS, ADAMS, BACKER & WALLEN, LLC
701 Fifth Avenue, Suite 4200
Seattle, WA 98104
T: (206) 813-9322
dstokesbary@chalmersadams.com

*I certify that this memorandum contains 3,956 words, in compliance with the Local Civil Rules

Jason B. Torchinsky (admitted pro hac vice)
Dallin B. Holt (admitted pro hac vice)
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
15405 John Marshall Hwy
Haymarket, VA 20169
T: (540) 341-8808
jtorchinsky@holtzmanvogel.com
dholt@holtzmanvogel.com

*Counsel for Intervenor-Defendants*

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

12

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Western District of Washington through the Court's CM/ECF System, which will serve a copy of this document upon all counsel of record.

DATED this 4th day of May, 2026.

Respectfully submitted,

s/ Andrew R. Stokesbary
Andrew R. Stokesbary, WSBA No. 46097

Counsel for Intervenor-Defendants

INTERVENOR-DEFENDANTS' MOTION
FOR RELIEF FROM JUDGMENT
No. 3:22-cv-5035-RSL

13

**Chalmers, Adams, Backer & Wallen, LLC**
701 Fifth Avenue, Suite 4200
Seattle, Washington 98104
Phone: (206) 813-9322