The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

SUSAN SOTO PALMER, et al.,

               Plaintiffs,

    v.

STEVEN HOBBS, et al.,

               Defendants.

NO. 3:22-cv-05035-RSL

SECRETARY OF STATE STEVE HOBBS'S RESPONSE TO INTERVENOR-DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B)

## I.    INTRODUCTION

Consistent with his position on the merits throughout this litigation, Secretary of State Steve Hobbs takes no position on whether the Supreme Court's decision in *Louisiana v. Callais*, No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026), should have any impact on this Court's existing orders.

But this Court should not take any action that would affect the use of the existing legislative district maps for 2026 elections. These maps are *currently in use*; election officials and hundreds of candidates for the Washington State Legislature have relied on those existing legislative districts. To change them now, on the eve of the primary election, would make it exceedingly difficult—if not impossible—to successfully hold the State's primary election and would also imperil the general election. At a minimum, such a change would cause significant voter confusion. This is a key rationale underlying the *Purcell* principle, which holds "that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican*

HOBBS RESPONSE TO MOTION FOR RELIEF FROM JUDGMENT NO. 3:22-cv-05035-RSL

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)). Altering election rules on the eve of the 2026 primary election is precisely what Intervenor-Defendants ask the Court to do here.

Intervenor-Defendants were correct in April 2022, when they warned this Court that altering Washington's legislative maps so close to an election "would inject chaos and delay in Washington's elections system, leave voters confused, and risk disenfranchising countless Washingtonians." Dkt. 61 at 1. That is no less true in May 2026.

## II.    RELEVANT FACTS

Washington election officials are in the midst of preparing for the 2026 primary election. While the date of the 2026 primary election is August 4, *see* Wash. Rev. Code § 29A.04.311, necessary preparations for that election begin much earlier and are well underway. "[R]unning a statewide election is a complicated endeavor . . . . [T]housands of state and local officials and volunteers must participate in a massive coordinated effort to implement the lawmakers' policy choices on the ground before and during the election . . . ." *Democratic Nat'l Comm. v. Wisconsin State Legislature*, 141 S. Ct. 28, 31 (2020) (Mem.) (Kavanaugh, J., concurring).

In Washington, the first statutory deadline concerns revising precinct boundaries. In 2026, the deadline for doing so was April 27, Wash. Rev. Code § 29A.16.040(1), and Washington law prohibits precinct changes until after the general election in November, *id.* All counties in Washington have completed their precinct changes. Declaration of Stuart Holmes on Motion for Relief From Judgment (Holmes Decl.) at ¶ 3.

The next step was candidate filing week, which was May 4 through May 8. *See* Wash. Rev. Code § 29A.24.050. Candidate filing week is the only opportunity to file to run for office; no new candidates may file to appear on the ballot. *Id.* This year, 1,104 candidates filed to run for office in Washington. Holmes Decl. at ¶ 4. This includes 294 candidates for legislative office, of whom 67 are candidates in a legislative district that was impacted by the remedial map adopted in this case. *Id.*

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

After candidate filing week, there are only two ways to alter who may appear on the ballot. First, a candidate may withdraw until 5:00pm on Monday, May 11. Wash. Rev. Code § 29A.24.131. Second, a candidate's eligibility may be challenged through an expedited court proceeding, which must be filed "no later than two days following the closing of the filing period . . . and shall be heard and finally disposed of by the court no later than five days after the filing thereof." Wash. Rev. Code § 29A.68.011.

The Secretary of State must certify candidates to county auditors by May 12, Wash. Rev. Code § 29A.36.010, and candidates must provide statements and photographs for the voters' pamphlet by May 18, Wash. Admin. Code § 434-381-120.

While specific deadlines vary by county, many counties have a June 1 deadline to send ballot styles (i.e., the ballot substance as it will appear to voters, including candidate names) to their vendors for printing. Holmes Decl. at ¶ 6. A small number of vendors provide ballot-printing services to many jurisdictions, so if a county misses its vendor deadline, there is no guarantee that ballots or voters' pamphlets can be printed in time for the election. Holmes Decl. at ¶ 7. At a minimum, it reduces the margin of error if something goes wrong (for example, if there is a misprint on a ballot design).

By June 20, ballots must be mailed to Washington voters who are overseas or are members of the military stationed outside Washington. Wash. Rev. Code § 29A.40.070(2); *see also* 52 U.S.C. § 20302(a)(8). For all other voters, ballots must be mailed no later than July 17. Wash. Rev. Code § 29A.40.070(1).

### III.    ARGUMENT

The relief that Intervenor-Defendants seek would take a wrecking ball to Washington's 2026 primary election preparations and Washington's election laws. This alone should be cause for modesty out of respect for principles of federalism. Worse, ordering changes to legislative districts now—after candidate filing week is complete—will jeopardize Washington's ability to

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

3

hold a successful primary election, create significant voter confusion, and result in significant expenses for Washington and counties in Washington.

The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 589 U.S. at 424. This principle applies in the months leading up to an election, at least where there is a risk of voter confusion. For example, in *Abbott v. League of United Latin American Citizens*, 146 S. Ct. 418, 419 (Dec. 4, 2025), the Supreme Court held that the district court had violated the *Purcell* principle in its November 18, 2025, order based on the impact on "an active primary campaign" for a primary election that was three-and-a-half months away, *id. See also Moore v. Harper*, 142 S. Ct. 1089, 1089 (2022) (Mem.) (Kavanaugh, J., concurring) (concluding that, months before primary election, "it is too late for the federal courts to order that the district lines be changed for the 2022 primary and general elections"). Notably, the *Purcell* principle strongly counsels federal courts against ordering changes to state election laws even if those courts conclude that the challenged election statute or practice is unlawful. *See Reynolds v. Sims*, 377 U.S. 533, 585 (1964) ("[W]here an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid."); *see also Malliotakis v. Williams*, 146 S. Ct. 809, 811 (Mar. 2, 2026) (Mem.) (Alito, J., concurring).

The risk of voter confusion from Intervenor-Defendants' requested relief is real. If this Court orders changes to legislative districts that must be implemented in 2026, that will, as explained in more detail below, require altering established deadlines and create a significant possibility that the 2026 primary election will have to be rescheduled. Any delay in the primary election will have cascading effects on the 2026 general election. The relief requested by Intervenor-Defendants is, in short, a recipe for chaos.

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

A brief overview of the cascading impacts illustrates the harms flowing from the relief sought by Intervenor-Defendants. That relief is to order Washington to stop using the legislative districts ordered by this Court and to instead use the legislative districts adopted by the Redistricting Commission. Dkt. 309 at 2, 11-12. Contrary to Intervenor-Defendants' suggestion, this is far from "a simple matter[.]" *Id.*at 11. First, counties would have to update precinct boundaries. Holmes Decl. at ¶ 10. This is not as simple as "undoing" changes made in response to this Court's 2023 order; other precinct boundaries have since been updated, such as to accommodate annexations of previously unincorporated areas. *Id.* Making precinct changes is a time-consuming process that requires approval by county legislative authorities following public notice and implementation by state and local election officials. Dkt. 51 at ¶¶ 8-13; Dkt. 52 at ¶¶ 15-22. Once precinct changes are made, election officials must notify voters by mail. *See* Wash. Rev. Code § 29A.16.070. The process of making, approving, and validating precinct changes would take multiple weeks and possibly more than a month. Holmes Decl. at ¶ 10; *see also* Dkt. 51 at ¶ 7-16.

Simultaneous with those precinct changes, election officials would also need to hold a new candidate filing opportunity, at least for the impacted legislative districts. At a minimum, that would create additional responsibilities for election officials in the twelve impacted counties as well as state election officials. Holmes Decl. at ¶ 9. There would have to be a reasonable period before the new filing opportunity to be sure that existing and potential candidates were aware of it and then a reasonable opportunity after the new filing period for any legal challenges to candidate eligibility. *See* Wash. Rev. Code § 29A.68.011. In short, it would take, in a best-case scenario, *weeks* to have a final list of legislative candidates.

After the final list of legislative candidates is complete, additional weeks would be necessary to finalize ballot designs. Holmes Decl. at ¶ 5. The number of candidates impacts the space required for each legislative race on the ballot. There are also multiple unique ballot designs in each county. *See* Dkt. 51 at ¶ 18. Designing ballots can take one month. *Id.* at ¶ 20.

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

After the ballots are designed, counties must also test each ballot type in their vote tallying system to be sure that votes will be tabulated correctly. Dkt. 52 at ¶ 32.

In addition, once the candidates are finalized, county election officials must prepare a local voters' pamphlet for the primary election that contains candidate statements. Wash. Rev. Code § 29A.32.210. After candidate filing is complete, there would have to be a reasonable period for candidates to submit statements, *see* Wash. Rev. Code § 29A.32.125 (providing 11 days after filing deadline), time for election officials to review the statement for compliance with state law, *see* Wash. Rev. Code § 29A.32.090(1), .121(1) (creating word and content limits), a reasonable period to notify third parties named in those statements and for judicial review, *see* Wash. Rev. Code § 29A.32.090(3) (permitting limited judicial review of candidate statements), and sufficient time for election officials to design, finalize, and translate the voters' pamphlets into additional languages. *See* Dkt. 52 at ¶ 30.

Once the ballots and voters' pamphlets are designed, counties must print them. Many counties rely on private vendors to print, assemble, and mail ballot packets and voters' pamphlets to voters. Dkt. 52 at ¶ 33. The printers create proofs of each ballot style, which counties must review and approve. *Id.* There are a limited number of vendors who have the capability to handle the volume and specific types of materials required by elections officials. Holmes Decl. at ¶ 7. As a result, counties must schedule their printings well in advance. *See* Holmes Decl. at ¶ 6. Many Washington counties have a deadline of June 1 to provide their materials to vendors. *Id.* If a county misses its deadline to provide ballot designs and voters' pamphlets to the printer, there is no guarantee that they can immediately have their printing completed, and that jeopardizes their ability to timely provide ballots and voters' pamphlets to voters. Holmes Decl. at ¶ 8.

Changing legislative districts now—after precinct review and candidate filing is complete—creates unacceptable risks of voter confusion. Washington is only a little over one month from the June 20 deadline to mail ballots to military and overseas voters. Wash. Rev.

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Code § 29A.40.070(2); *see also* 52 U.S.C. § 20302(a)(8). It is almost impossible to imagine that election officials could provide notice of and hold a new filing period, provide an opportunity for legal challenges to candidate eligibility, allow time for candidate statements and related challenges, and design, print, and mail ballots within the at-most five available weeks. So military and overseas voters are almost certain to receive their ballot materials late, undermining their opportunity to participate in Washington's primary election.

While there is additional time for mailing ballots to all other registered voters, there would still be no guarantee that all of the steps could be accomplished by the July 17 deadline. Assuming this Court issued an order by Friday, May 15, that would provide nine weeks. Making and approving precinct-related changes would require several weeks. Providing notice to candidates of the new filing period, holding that new filing period, and providing an opportunity for legal challenges would likely require a minimum of three weeks. Designing, validating, and translating the various ballot styles and local voters' pamphlets would likely require four weeks, putting counties well beyond that June 1 vendor deadline that many have. Some of these tasks could even take longer than normal, as the limited number of certified county election staff will have to work on multiple projects simultaneously. At that point, the time necessary to proof, approve, print, and mail ballots is uncertain and will depend on vendor availability. There is an all-too-real possibility that counties would not be able to timely mail ballots to voters, undermining the ability of *all* voters to participate in the primary election.

Postponing the primary election is not a solution. One major problem there is voter confusion. The primary election date is set by statute and has been included on the Secretary of State's public election calendar since it was published. Holding an election on a different day is certain to cause confusion for voters. Another problem concerns the ability of election officials to complete all the necessary preparation for the general election. Under the existing schedule set by Washington law, election officials must begin preparing for the general election immediately after the primary election results are certified on August 21. *See* Wash. Rev. Code

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

§ 29A.60.240. There are just four weeks between that certification and the September 19 deadline for mailing ballots to military and overseas voters and just eight weeks until ballots must (and voters' pamphlets should) be mailed to *all* voters. *See* Wash. Rev. Code § 29A.40.070(1)-(2). If the primary election is postponed, that will necessarily leave less time to complete these tasks and, for the reasons described above, create a significant risk that ballots and voters' pamphlets will not be timely mailed to voters for the general election.

In short, it is simply too late to alter legislative districts for the 2026 elections. The Secretary's position on the timing requirements has been consistent throughout this litigation. Dkt. 52 at ¶ 8 ("[A]ny revised district maps would need to be final by March 28, to allow my office and county elections officials to perform necessary tasks before the primary election on August 2, 2022."); Dkt. 179 at ¶ 8 ("[A]ny revised district maps would need to be final by March 25, 2024, to allow my office and county elections officials to perform necessary tasks before the primary election on August 6, 2024."). In 2022, Intervenor-Defendants agreed that April was too close in time to Washington's primary election for this Court to alter legislative districts. Dkt. 61 at 1. Now, apparently failing to appreciate the efforts required to revert to previous legislative districts, they ask this Court to change those legislative districts even *closer* in time to the primary election. This Court should decline the invitation.

It is true that some other states have recently made disruptive changes to their congressional and legislative districts, both before and after the Supreme Court's decision in *Callais*. *See* Nathanial Rakich, *Here's where redistricting stands after Florida's new congressional map and the Supreme Court's Callais decision*, Votebeat.org (May 4, 2026), https://www.votebeat.org/national/2026/05/04/florida-redistricting-supreme-court-louisiana-callais-gerrymander-2026-election/. But that's not relevant to whether federal courts should take similar actions: "It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election." *Merrill v. Milligan*, 142 S. Ct. 879, 881-82

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

(2022) (Mem.) (Kavanaugh, J., concurring). Washington law firmly favors stability as elections draw near. *See* Wash. Rev. Code § 29A.68.011 (requiring primary election challenges be completed within seven days); Wash. Rev. Code § 29A.16.040 (prohibiting changes to precincts between seven days before candidate filing and the general election). That decision is entitled to respect.

## IV.   CONCLUSION

Secretary Hobbs strongly opposes Intervenor-Defendants' request to enter an order altering legislative districts for the 2026 election. The "impending election is imminent, and [Washington's] election machinery is already in progress[.]" *Reynolds*, 377 U.S. at 585. Secretary Hobbs takes no position on the other issues presented by Intervenor-Defendants' motion.

RESPECTFULLY SUBMITTED this 11th day of May, 2026.

I certify that this memorandum contains 2,794 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
  *Attorney General*

*s/ Karl D. Smith*
KARL D. SMITH, WSBA 41988
  *Deputy Solicitor General*
KATE S. WORTHINGTON, WSBA 47556
  *Assistant Attorney General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Karl.Smith@atg.wa.gov
Kate.Worthington@atg.wa.gov

*Attorneys for Defendant Steven Hobbs*

HOBBS RESPONSE TO MOTION FOR
RELIEF FROM JUDGMENT
NO. 3:22-cv-05035-RSL

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200