The Honorable Robert S. Lasnik

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

SUSAN SOTO PALMER, et al.,

       Plaintiffs,

    v.

STEVEN HOBBS, in his official capacity as Secretary of State of Washington, and the STATE OF WASHINGTON,

       Defendants,

   and

JOSE TREVINO, et al.,

       Intervenor-Defendants.

NO. 3:22-cv-05035-RSL

STATE OF WASHINGTON'S RESPONSE TO INTERVENOR-DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(B)

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(B)
NO.3:22-CV-05035-RSL

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 2

    A.    Plaintiffs Challenged Legislative District 15
        Under Section 2 of the Voting Rights Act,
        and This Court Denied Their Motion for
        Preliminary Injunction Under the *Purcell* Principle ........................... 2

    B.    Plaintiffs Succeeded on Their Section 2
        Challenge Under Prevailing VRA Precedent ........................................ 3

    C.    This Court Adopts a Map Remedying the
        Section 2 Violation ................................................................................ 5

    D.    The Ninth Circuit Unanimously Affirmed
        this Court's Orders ................................................................................. 6

    E.    The Supreme Court's *Callais* Decision
        Overruled Prior Section 2 Precedent .................................................... 6

    F.    Intervenors Move to Change District Boundaries
        Just Three Months Before the Primary Election,
        Even Though Election Preparation Is Already Underway ..................... 7

III.  LEGAL STANDARD .......................................................................................... 8

IV.   ARGUMENT ....................................................................................................... 8

    A.    Granting Relief from the Judgment Would
        Violate the *Purcell* Principle ............................................................... 8

    B.    Intervenors Fail to Meet Rule 60(b)'s Standards ............................... 10

    C.    The Supreme Court Will Soon Weigh in on the Judgement ............... 12

    D.    The Court Need Not Issue an Indicative Order .................................. 12

V.    CONCLUSION .................................................................................................. 13

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(B)
NO.3:22-CV-05035-RSL

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# TABLE OF AUTHORITIES

## Cases

*Abbott v. League of United Latin Am. Citizens*,
  146 S. Ct. 418 (2025)................................................................................................. 8, 9

*Agostini v. Felton*,
  521 U.S. 203 (1997)...................................................................................................... 11

*Allen v. Milligan*,
  599 U.S. 1 (2023)............................................................................................................ 4

*Democratic Nat'l Comm. v. Wis. State Leg.*,
  141 S. Ct. 28 (2020)..................................................................................................... 2, 8

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005)...................................................................................................... 11

*Hall v. Haws*,
  861 F.3d 977 (9th Cir. 2017) ......................................................................................... 8

*Henson v. Fid. Nat'l Fin., Inc.*,
  943 F.3d 434 (9th Cir. 2019) ........................................................................................ 11

*Lal v. California*,
  610 F.3d 518 (9th Cir. 2010) ........................................................................................ 11

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988)...................................................................................................... 11

*Louisiana v. Callais*,
  No. 24-109,
  2026 WL 1153054 (U.S. Apr. 29, 2026) ........................................................... 1, 6, 7, 12

*Moore v. Harper*,
  142 S. Ct. 1089 (2022).................................................................................................... 8

*Palmer v. Hobbs*,
  150 F.4th 1131 (9th Cir. 2025) ................................................................................. 6, 12

*Palmer v. Hobbs*,
  No. 3:22-cv-05035-RSL,
  2022 WL 1102196 (W.D. Wash. Apr. 13, 2022) ...................................................... 2, 3, 10

*Palmer v. Hobbs*,
  No. 3:22-cv-05035-RSL,
  2024 WL 1138939 (W.D. Wash. Mar. 15, 2024) ............................................................. 5

*Phelps v. Alameda*,
  569 F.3d 1120 (9th Cir. 2009) ...................................................................................... 11

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(B)
NO.3:22-CV-05035-RSL

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*Purcell v. Gonzalez*,
549 U.S. 1 (2006).................................................................................... passim

*Riley v. Filson*,
933 F.3d 1068 (9th Cir. 2019) .......................................................................... 11

*Safe Flight Instrument Corp. v. United Control Corp.*,
576 F.2d 1340 (9th Cir. 1978) .......................................................................... 11

*Soto Palmer v. Hobbs*,
686 F. Supp. 3d 1213 (W.D. Wash. 2023) ...................................................... 4, 5

*Thornburg v. Gingles*,
478 U.S. 30 (1986)............................................................................................ 3, 4

*Trevino v. Palmer*,
144 S. Ct. 1133 (2024)........................................................................................ 6

*Trevino v. Palmer*,
144 S. Ct. 873 (2024).......................................................................................... 5

*United States ex rel. Escobar v. Universal Health Servs., Inc.*,
842 F.3d 103 (1st Cir. 2016)............................................................................. 12

*United States v. Davis*,
No. 2:98-cr-00114-KJM-AC,
2021 WL 1122574 (E.D. Cal. Mar. 24, 2021) ................................................. 12

*United States v. Sears*,
411 F.3d 1240 (11th Cir. 2005) ........................................................................ 13

**Statutes**

52 U.S.C. § 10101................................................................................................ 2, 7

52 U.S.C. § 20302 ............................................................................................... 7, 9

Wash. Rev. Code § 29A.24.010 ............................................................................. 9

Wash. Rev. Code § 29A.24.050 ........................................................................ 7, 9

Wash. Rev. Code § 29A.24.131 ............................................................................. 9

Wash. Rev. Code § 29A.36.010 ........................................................................ 8, 9

Wash. Rev. Code § 29A.40.070 ........................................................................ 7, 9

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(B)
NO.3:22-CV-05035-RSL

iii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**Rules**

Fed. R. Civ. P. 60(b) ................................................................................................ 8, 9, 13

Fed. R. Civ. P. 60(b)(5) ............................................................................................ 8, 10, 11

Fed R. Civ. P. 60(b)(6) ............................................................................................. 8, 10, 11

Fed. R. Civ. P. 62.1 .................................................................................................. 12

Fed. R. Civ. P. 62.1(a) ............................................................................................. 12

**Regulations**

Wash. Admin. Code § 434-381-120 .......................................................................... 8, 9

**Other Authorities**

Docket, *Trevino v. Hobbs*, No. 25-918,
   https://www.supremecourt.gov/docket/docketfiles/html/public/25-918.html
   (last visited May 8, 2026) ..................................................................................... 7

Fed. R. Civ. P. 62.1
   Advisory Committee Notes on Rules 2009 ............................................................ 12

*File for Office*, Washington Secretary of State,
   https://www.sos.wa.gov/elections/candidates/filing-resources/file-office
   (last visited May 8, 2026) ..................................................................................... 9

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(B)
NO.3:22-CV-05035-RSL

iv

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

## I.   INTRODUCTION

The Court should deny Intervenor-Defendants' Rule 60(b) motion, which seeks to cast aside the remedial map less than three months before the election, in light of the U.S. Supreme Court's decision in *Louisiana v. Callais*, No. 24-109, 2026 WL 1153054 (U.S. Apr. 29, 2026). *Callais* effectively overrules four decades of Section 2 precedent, and the State anticipates that at some point this Court or the Ninth Circuit will need to apply *Callais* to this case. Nonetheless, Intervenors' request to set new district boundaries at this late date conflicts with the *Purcell* principle and thus must be denied. Intervenors ask the Court to insert itself into an ongoing primary by resetting legislative district lines and reopening candidate filing well past its statutory deadline. These acts, in turn, will delay interlocking, federal and state-required deadlines—risking serious disruption to the August primary election. In the prior words of Intervenors, such relief "would inject chaos and delay in Washington's elections system, leave voters confused, and risk disenfranchising countless Washingtonians." Dkt. # 61 at p. 1. The rules of the election road should be clear and settled; the Court can and should deny Intervenors' Rule 60(b) motion based on *Purcell* alone.

The Court can deny the motion on other grounds too. First, Intervenors fail to meet standards for Rule 60(b)(5) and (b)(6) relief because the equities and unique circumstances of this case cut sharply against disrupting the status quo in the midst of an election cycle. Second, the Supreme Court's imminent consideration of Intervenors' pending petition for a writ of certiorari counsels against this Court changing the judgment before the Supreme Court decides what it will do with the current judgment. The motion for relief should be denied.

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

1

## II.    BACKGROUND

**A.    Plaintiffs Challenged Legislative District 15 Under Section 2 of the Voting Rights Act, and This Court Denied Their Motion for Preliminary Injunction Under the *Purcell* Principle**

Plaintiffs filed this suit in January 2022 alleging that Legislative District 15 in the Yakima Valley diluted Hispanic voting strength in violation of Section 2 of the Voting Rights Act. Dkt. # 1. They alleged an intent claim and a results claim.

In February 2022, Plaintiffs filed a motion for preliminary injunction seeking to force the State to adopt Voting Rights Act (VRA)-compliant maps for the 2022 legislative elections. Dkt. # 38. While that motion was pending, Intervenors moved to intervene to defend LD 15 against the Section 2 claim. Dkt. # 57. While their intervention motion was pending, Intervenors filed a proposed opposition to Plaintiffs' PI motion in which they argued, among other things, that this Court should deny preliminary relief under the *Purcell* principle, under which, in Intervenors' words "the Supreme Court 'has repeatedly emphasized that federal courts ordinarily should not alter state election laws in the period close to an election[.]'" Dkt. # 61 at p. 3 (quoting *Democratic Nat'l Comm. v. Wis. State Leg.*, 141 S. Ct. 28, 30 (2020) (Kavanaugh, J., concurring)). As Intervenors put it, the *Purcell* principle required this Court to maintain the prevailing maps, even if they were arguably unlawful, to avoid "injecting chaos into Washington's upcoming primary elections," which were then just four months away. *Id.* at p. 24; *see also id.* at p. 3 ("Earlier this year, the Supreme Court invoked the *Purcell* principle to stay a district court injunction with respect to elections that were scheduled to begin four months later." (citing *Merrill v. Milligan*, 142 S. Ct. 879 (2022)).

On April 13, 2022, this Court denied Plaintiffs' motion, agreeing with Intervenors that, even assuming Plaintiffs were likely to succeed on the merits, the *Purcell* principle "compel[led] the conclusion that the Court should refrain from interfering in the current election cycle." *Palmer v. Hobbs*, No. 3:22-cv-05035-RSL, 2022 WL 1102196, at *4 (W.D. Wash. Apr. 13, 2022) (Dkt. # 66); *see also id.* at *2 n.4 ("For purposes of this analysis, the Court

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

assumes that plaintiffs have shown a likelihood of success on the merits of their VRA claim and irreparable harm in the absence of injunctive relief."). As this Court explained, "[r]edistricting moves voters – and potentially candidates – from one district to another and alters everything from precinct boundaries to voter records to ballot layouts." *Id.* at *3. And implementing an election, particularly one with new district boundaries, requires election administrators to meet a series of cascading deadlines, beginning with creating precinct boundaries in February of an election year, through candidate filing deadlines in May, certification deadlines, and creation immediately thereafter of voter information, to ensure that ballots can begin going out to military and overseas voters forty-five days before the August primary, as required by state and federal law. *Id.* at *4-5. In short, "the difficulties facing the Secretary of State and local election officials if a change in the legislative district maps is made at this late date"—i.e., in mid-April—"suggest that we are too close to the [August] 2022 election to enjoin the use of the existing plan for this election cycle." *Id.* at *4.

**B.    Plaintiffs Succeeded on Their Section 2 Challenge Under Prevailing VRA Precedent**

After the Court ordered the State of Washington to be added as a defendant, the State prepared to defend against Plaintiffs' challenge to LD 15. To that end, the State sought out a highly respected expert, Dr. John Alford, with a history primarily of working for government defendants in VRA cases. After carefully reviewing the evidence, Dr. Alford submitted an expert report concluding that the three *Gingles* preconditions appeared to be met. Trial Ex. 601. Based on Dr. Alford's conclusions, the factual findings in other recent federal and state VRA cases in the Yakima area, and other record evidence, the State notified the parties and the Court that it had concluded that it could no longer "dispute at trial that *Soto Palmer* Plaintiffs have satisfied the three *Gingles* preconditions for pursuing a claim under Section 2 of the VRA based on discriminatory results[,]" or "that the totality of the evidence test likewise favors the *Soto Palmer* Plaintiffs[.]" Dkt. # 194 at p. 10.

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

On August 10, 2023, this Court issued a Memorandum of Decision, finding that LD 15 had the effect of discriminating against Hispanic voters by denying them the equal right to elect candidates of their choice. *Soto Palmer v. Hobbs*, 686 F. Supp. 3d 1213 (W.D. Wash. 2023) (Dkt. # 218). Following the Supreme Court's reaffirmance of the *Gingles* framework in *Allen v. Milligan*, 599 U.S. 1 (2023), this Court analyzed the *Gingles* factors under then-prevailing precedent and concluded that the *Soto Palmer* Plaintiffs had satisfied them all. *Soto Palmer*, 686 F. Supp. 3d at 1224-27.

On the first *Gingles* factor, the Court pointed to numerous "reasonably configured" districts presented by Plaintiffs that afforded Hispanic voters "a realistic chance of electing their preferred candidates[.]" *Id.* at 1224. On the second *Gingles* factor, the Court noted that "[e]ach of the experts who addressed this issue, including Intervenors' expert, testified that Latino voters overwhelmingly favored the same candidate in the vast majority of the elections studied[,]" with "statistical evidence show[ing] that Latino voter cohesion is stable in the 70% range across election types and election cycles over the last decade." *Id.* at 1226. And on the third *Gingles* factor, the Court highlighted both Plaintiffs' and the State's experts' conclusion "that white voters in the Yakima Valley region vote cohesively to block the Latino-preferred candidates in the majority of elections (approximately 70%)[,]" and that "Intervenors d[id] not dispute the data or the opinions offered by" either. *Id.* at 1226.

Turning to the totality-of-circumstances analysis, the Court found that seven of the nine Senate Factors "support the conclusion that the bare majority of Latino voters in LD 15 fails to afford them equal opportunity to elect their preferred candidates." *Id.* at 1234. Thus, the court concluded, although "things are moving in the right direction thanks to aggressive advocacy, voter registration, and litigation efforts that have brought at least some electoral improvements in the area, it remains the case that the candidates preferred by Latino voters in LD 15 usually go down in defeat given the racially polarized voting patterns in the area." *Id.* (footnote omitted).

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Accordingly, the Court entered judgment for Plaintiffs and ordered a remedial process to adopt a new legislative map. *Id.* at 1235-36.

Intervenors moved to stay that order and the remedial process, and the Ninth Circuit motions panel unanimously denied the motion. *See* Order Den. Mot., *Palmer v. Hobbs*, Nos. 23-35595, 24-1602 (9th Cir. Dec. 21, 2023), DktEntry 45. Intervenors then petitioned the Supreme Court for certiorari before judgment, and the Court denied their petition. *Trevino v. Palmer*, 144 S. Ct. 873 (2024).

The case then moved to the remedial phase.

**C.    This Court Adopts a Map Remedying the Section 2 Violation**

Following its liability order, this Court engaged in a lengthy remedial process to adopt a new map, aided by extensive briefing and argument by the parties, an evidentiary hearing, and a respected non-partisan redistricting expert.

On March 15, 2024, this Court ordered a new map, with a redrawn, newly labeled LD 14. In a detailed order, the court explained that the remedy it adopted was necessary to remedy the VRA violation it previously found. *Palmer v. Hobbs*, No. 3:22-cv-05035-RSL, 2024 WL 1138939, at *1-2 (W.D. Wash. Mar. 15, 2024) (Dkt. # 290). As the Court explained, "the new configuration provides Latino voters with an equal opportunity to elect candidates of their choice to the state legislature, especially with the shift into an even-numbered district, which ensures that state Senate elections will fall on a presidential year when Latino voter turnout is generally higher." *Id.* at *2. Although Intervenors tried to characterize this reduction in Hispanic Citizen Voting Age Population (CVAP) as "dilution," the unchallenged evidence was that enacted LD 15 did not permit Hispanic voters to elect candidates of their choice, while the new LD 14 would. *Compare Soto Palmer*, 686 F. Supp. 3d at 1226-27, *with* Dkt. # 278.

Following the district court's remedial order, Intervenors filed a second motion for a stay in the Ninth Circuit, which was again unanimously denied. *See* Order Den. Mot. Stay, *Palmer v. Hobbs*, Nos. 23-35595, 24-1602 (9th Cir. Mar. 22, 2024), DktEntry 18.1. In a last-ditch effort to

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

deny Hispanic voters relief in time for the 2024 elections, Intervenors then sought a stay from the Supreme Court. *See* App. for Stay, *Trevino v. Soto Palmer*, No. 23A862 (U.S. Mar. 25, 2024). The Court denied that stay application with no dissents noted. *Trevino v. Palmer*, 144 S. Ct. 1133 (2024).

**D.    The Ninth Circuit Unanimously Affirmed this Court's Orders**

The Ninth Circuit unanimously affirmed this Court's liability and remedial orders.

On the liability order, the Ninth Circuit concluded that "none of the Intervenors has standing to challenge the liability determination" because none alleged any harm that flowed from that order. *Palmer v. Hobbs*, 150 F.4th 1131, 1141 (9th Cir. 2025). On the remedial order, the Ninth Circuit concluded that Intervenor Trevino had standing to challenge that order as a racial gerrymander since he was moved into the remedial district, but it held that he failed to show this Court's remedial map unconstitutionally sorted him by race. *Id.* at 1144-45, 1146.[1] Applying then-prevailing precedent, the Ninth Circuit held that "[n]othing in the record . . . supports a claim that race predominated in the redistricting process." *Id.* at 1146. "To the contrary," the court explained, "the district court accomplished three distinct, non-racial objectives when it adopted a map that: (1) starts with, and avoids gratuitous changes to, the enacted map while remedying the Voting Rights Act violation at issue; (2) keeps the vast majority of the lands that are of interest to the Yakama Nation together; and (3) is consistent with the other state law and traditional redistricting criteria." *Id.* (internal quotations omitted). The Ninth Circuit thus affirmed this Court's remedial map on the merits.

Intervenors then petitioned for a writ of certiorari, which is currently pending.

**E.    The Supreme Court's *Callais* Decision Overruled Prior Section 2 Precedent**

On April 29, while Intervenors' cert petition remained pending, the Supreme Court decided *Louisiana v. Callais*, 2026 WL 1153054, at *3, substantially altering how courts are

---

[1] The Ninth Circuit concluded that Mr. Trevino failed to raise his racial gerrymandering argument during the remedial phase in this Court but nonetheless exercised its discretion to consider the argument for the first time on appeal. *Id.* at 1145-46.

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

supposed to address claims under Section 2 of the VRA. *See Callais*, 2026 WL 1153054, at *15-16; *see also id.* at *20 ("The majority claims only to be 'updat[ing]' our Section 2 law, as though through a few technical tweaks . . . But in fact, those 'updates' eviscerate the law.") (Kagan, J., dissenting). As a result, the Ninth Circuit and/or this Court may soon be called upon to conduct a fresh analysis under the Supreme Court's new test.

The State's (and Plaintiffs') response to Intervenors' petition is currently due June 2, 2026 in time for the Supreme Court to take action on Intervenors' petition before the October 2025 term ends. *See* Docket, *Trevino v. Hobbs*, No. 25-918, https://www.supremecourt.gov/docket/docketfiles/html/public/25-918.html (last visited May 8, 2026). Thus, the Supreme Court is likely to act on Intervenors' petition next month.

**F.    Intervenors Move to Change District Boundaries Just Three Months Before the Primary Election, Even Though Election Preparation Is Already Underway**

Following *Callais*, Intervenors filed this motion seeking the very relief they vociferously (and successfully) opposed on *Purcell* grounds four years ago. Dkt. # 309 at pp. 2, 11. Specifically, they ask this Court to "restor[e] the redistricting plan adopted by the Commission" in 2021 and grant other "relief to provide for legislative candidates to file and run for election under the Commission's map as soon as the 2026 primary and general election," including extending the candidate filing deadline to give effect to the 2021 legislative map. *Id.* at 2, 11; *see also* Dkt. # 309-1 at p. 2.

The only difference is that the timeline is even tighter here than it was four years ago. Indeed, the candidate filing deadline already passed on May 8. *See* Wash. Rev. Code § 29A.24.050. And election day is less than three months away, on August 4, with ballots required to go out as much as forty-five days ahead of time for military and overseas voters. *See* 52 U.S.C. § 20302; Wash. Rev. Code § 29A.40.070. Between now and then, Washington law sets a number of deadlines, including deadlines to certify candidates and for candidates to

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

provide information for voter information pamphlets. *See* Wash. Rev. Code § 29A.36.010; Wash. Admin. Code § 434-381-120.

### III.    LEGAL STANDARD

Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . ." Under Rule 60(b)(5), a court may grant relief when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable[.]" Rule 60(b)(6) is a catchall provision for "any other reason that justifies relief" besides the enumerated reasons set forth in Rule 60(b)(1)-(5). "A movant seeking relief under Rule 60(b)(6) must show 'extraordinary circumstances justifying the reopening of a final judgment.'" *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).

### IV.    ARGUMENT

**A.    Granting Relief from the Judgment Would Violate the *Purcell* Principle**

Intervenors' request for Rule 60(b) relief from the judgment should be denied under *Purcell*. Under *Purcell v. Gonzalez*, 549 U.S. 1 (2006), federal courts may not disrupt a state's voting rules close to an election. *See, e.g.*, *Moore v. Harper*, 142 S. Ct. 1089 (2022) (Kavanaugh, J., concurring) ("In light of the *Purcell* principle and the particular circumstances and timing of the impending primary elections in North Carolina, it is too late for the federal courts to order that the district lines be changed for the 2022 primary and general elections[.]"); *Democratic Nat'l Comm.*, 141 S. Ct. at 31 (Kavanaugh, J., concurring) ("The Court's precedents recognize a basic tenet of election law: When an election is close at hand, the rules of the road should be clear and settled . . . because running a statewide election is a complicated endeavor."). The Supreme Court recently invoked this principle in *Abbott v. League of United Latin American Citizens*, 146 S. Ct. 418 (2025), staying the reinstatement of a prior map pending appeal, and chiding the district court "for improperly insert[ing] itself into an active primary campaign,

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

causing much confusion and upsetting the delicate federal-state balance in elections." *Id.* at 419. There, the district court entered an injunction reinstating a 2021 map in November 2025 for a March 2026 primary election and November 2026 general election. *See id.* at 428 (Kagan, J., dissenting).

Intervenors' request for relief from judgment has an even sharper *Purcell* problem. The primary election is less than three months away, on August 4, and mail ballots must be mailed to military and overseas voters forty-five days before that election and mailed to other voters at least eighteen days before that election. *See* 52 U.S.C. § 20302; Wash. Rev. Code § 29A.40.070. Some election deadlines have already elapsed, including the requirement that filing officials designate position numbers for legislative office, *see* Wash. Rev. Code § 29A.24.010, and candidate filing. *See File for Office*, Washington Secretary of State, https://www.sos.wa.gov/elections/candidates/filing-resources/file-office (last visited May 8, 2026); Wash. Rev. Code § 29A.24.050 (setting candidate filing as occurring on the first Monday in May and ending the following Friday). Thus, candidates have *already* filed for an election based on the districts in which they live, and it is far too late to rejigger district lines for the 2026 elections.

These filing deadlines trigger a cascade of deadlines for the Secretary of State's Office. For example, today before 5:00 p.m. is the deadline for a candidate to withdraw their declaration of candidacy. Wash. Rev. Code § 29A.24.131. Tomorrow is the Secretary's deadline to certify candidates who filed declarations of candidacy for the primary to county auditors. *See* Wash. Rev. Code § 29A.36.010 ("[n]ot later than the Tuesday following the regular filing period"). Next Tuesday, May 19, is the deadline for candidates to provide statements and photographs for the voters' pamphlets. Wash. Admin. Code § 434-381-120 (statements due "no later than 11 days following the last day of the filing period").

If the Court were to grant Intervenors' Rule 60(b) motion (despite their pending cert petition), that decision would cause delays in candidate filing that will have cascading

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

9

consequences for election deadlines that the *Purcell* principle guards against. As the Secretary of State's Director of Elections previously declared:

> Any change to the candidate filing dates would create significant impacts for my office and for counties. Pushing back the candidate filing deadline will cost time that we don't have. It would force us to delay all other dates and deadlines related to the election, including the election date itself.

Dkt. # 179 at p 4 ¶¶ 24-25.

Indeed, at an earlier stage of this case, this Court applied the *Purcell* principle to deny Plaintiffs' initial motion for a preliminary injunction. *See Palmer*, 2022 WL 1102196 (Dkt. # 66). This Court recognized Washington's series of election deadlines—many fixed by state and federal law—that cannot be altered, but Plaintiffs' then-requested relief would have disrupted. *See id.* at *3 (rejecting plaintiffs' suggestion that "the Court can alter deadlines in a schedule that are daisy-chained to later, fixed events without impacting the election"). This is in accord with Intervenors' position opposing Plaintiffs' preliminary injunction, arguing that the injunction then would "lead to voter confusion, frustration and even disenfranchisement." Dkt. # 61 at p. 21. Intervenors further emphasized that "equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, *even though the existing apportionment scheme was found invalid*." Dkt. # 61 at p. 22 (quoting *Reynolds v. Sims*, 377 U.S. 533, 585 (1964)) (emphasis added by Intervenors). Intervenors' argument then applies with greater force now, given a closer-in-time primary election.

*Purcell* militates against Intervenors' requested relief.

**B.    Intervenors Fail to Meet Rule 60(b)'s Standards**

Intervenors do not meet the high standards for relief from a final judgment under Rule 60(b)(5) or (b)(6) because equitable principles weigh heavily against the relief Intervenors seek.

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Under Rule 60(b)(5), a court may grant relief when the prospective application of a final judgment "is no longer equitable[.]" This determination "lies within the discretion of the trial court, guided by traditional principles of equity jurisprudence." *Safe Flight Instrument Corp. v. United Control Corp.*, 576 F.2d 1340, 1343 (9th Cir. 1978). Here, the equities cut sharply in favor of denying Intervenors' requested relief because the enforcement of the current electoral map is the only equitable outcome at this late date in the election cycle and the only permissible course of action under *Purcell*. *Supra* Section IV.A.

Intervenors' Rule 60(b)(6) request fares no better. To obtain relief under "Rule 60(b)(6)'s catch-all provision, a movant must "show extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535, (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 873 (1988) (Rehnquist, J., dissenting). Accordingly, as Intervenors concede, the Ninth Circuit applies this Rule "sparingly[.]" *Lal v. California,* 610 F.3d 518, 524 (9th Cir. 2010) (citation modified); Dkt. # 309 at p. 4; *accord Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019).

Intervenors cannot clear this bar. "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)[.]" *Agostini v. Felton*, 521 U.S. 203, 239 (1997). Intervenors rely heavily on *Phelps v. Alameda*, 569 F.3d 1120 (9th Cir. 2009)—a rare instance in which the Ninth Circuit concluded that a change in the law warranted relief under Rule 60(b)(6). *See* Dkt. # 309 at pp. 4, 8. But *Phelps* is of no assistance to Intervenors because it emphasized the need for a "case-by-case inquiry" to determine whether an intervening change in law justified the reopening of a final judgment. *Phelps*, 569 F.3d at 1133; *accord Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 444 (9th Cir. 2019) (requiring court to "evaluate the circumstances surrounding the specific motion before the court" in determining whether an intervening change in the law warrants relief under Rule 60(b)(6)) (citation modified); *see also Riley*, 933 F.3d at 1071 (recognizing that "a change in the

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

11

law does not always supply sufficient conditions for granting" a Rule (60)(b)(6) motion). Here, such an inquiry cuts decidedly against relief, because the *Purcell* principle precludes the Court from disrupting a state's voting rules on the eve of an election. *Supra* Section IV.A.

**C.    The Supreme Court Will Soon Weigh in on the Judgement**

Intervenors have a petition for certiorari currently pending before the U.S. Supreme Court, with the State's response due by June 2, 2026. *See supra* Section II.E. The Supreme Court will soon decide whether it will grant Intervenors' petition; deny their petition; or grant their petition, vacate the judgment of the lower court, and remand the case for further consideration in light of *Callais*. The upshot of that process may well mean that this case will soon be back before this Court to reconsider its prior rulings. There is no need for this Court to grant relief from that judgment, when the Supreme Court will soon weigh in on that very judgment.

**D.    The Court Need Not Issue an Indicative Order**

Federal Rule of Civil Procedure 62.1 limits the actions a district court may take when it "lacks authority to grant [a motion for relief] because of an appeal that has been docketed and is pending." Fed. R. Civ. P. 62.1(a). "Rule 62.1 applies only when" an appeal "deprive[s] the district court of authority to grant relief without appellate permission." Fed. R. Civ. P. 62.1 Advisory Committee Notes on Rules 2009.

In this case, the Ninth Circuit decided the appeal and issued the mandate. *See Palmer*, 150 F.4th 1131; Dkt. #305 (mandate). The return of the mandate vested jurisdiction back to this Court, and Intervenors' pending cert petition has no jurisdiction-divesting effect. *See, e.g.*, *United States v. Davis*, No. 2:98-cr-00114-KJM-AC, 2021 WL 1122574, at *1 (E.D. Cal. Mar. 24, 2021) ("[B]ecause the Ninth Circuit's mandate has issued, this court has jurisdiction to consider [defendant's] motion even though he has petitioned for certiorari in the Supreme Court."); *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 106 n.1 (1st Cir. 2016) ("[T]he mere act of filing a petition for certiorari does not deprive the district

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

court of jurisdiction over the case."); *United States v. Sears*, 411 F.3d 1240, 1242 (11th Cir. 2005) (per curiam) (same).

This Court has jurisdiction and cannot (and need not) issue an indicative ruling. The Court should deny Intervenors' Rule 60(b) motion for the reasons set forth above.

## V.    CONCLUSION

The Court should deny Intervenors' Rule 60(b) motion.

DATED this 11th day of May, 2026.

I certify that this memorandum contains 4,200 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Attorney General

*s/ Cristina Sepe*
CRISTINA SEPE, WSBA No. 53609
Deputy Solicitor General
ANDREW R.W. HUGHES, WSBA No. 49515
ERICA R. FRANKLIN, WSBA No. 43477
Assistant Attorneys General
Cristina.Sepe@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Erica.Franklin@atg.wa.gov

*Counsel for the State of Washington*

STATE OF WASHINGTON'S RESPONSE
TO INTERVENORS' MOTION FOR
RELIEF FROM JUDGMENT PURSUANT
TO FED. R. CIV. P. 60(b)
NO.3:22-CV-05035-RSL

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744