The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SUSAN SOTO PALMER, *et. al.*, | Case No.: 3:22-cv-05035-RSL |
| *Plaintiffs*, | Judge: Robert S. Lasnik |
| v. | **PLAINTIFFS' OPPOSITION TO INTERVENOR-DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B)** |
| STEVEN HOBBS, *et. al.*, | |
| *Defendants*, and | |
| JOSE TREVINO, ISMAEL CAMPOS, and ALEX YBARRA, | |
| *Intervenor-Defendants*. | |

Plaintiffs Susan Soto Palmer, Faviola Lopez, Alberto Macias, Heliodora Morfin, and Caty Padilla ("Plaintiffs") oppose Intervenors' Rule 60(b) motion. In March 2024, this Court imposed a legislative map to remedy a violation of Section 2 of the Voting Rights Act ("Section 2") in the Yakima Valley. Candidates have announced and are campaigning under that map for the 2026 election cycle. Intervenors—three individuals with no role in administering the map, who face no burden from this Court's judgments, and who have a petition for a writ of certiorari pending— have asked this Court to set aside its judgments on the basis of the U.S. Supreme Court's decision in *Louisiana v. Callais*, No. 24-109, 608 U.S.__ (2026). But this court lacks jurisdiction, the *Purcell* principle forecloses relief, and Intervenors fail to meet the high burden imposed by Rule

60(b), as they face no inequity from the continued enforcement of this Court's judgments and Plaintiffs prevail even under *Callais*. Intervenor's motion should be denied.

## BACKGROUND

Three years ago, after a four-day trial and consideration of a voluminous record, this Court found that the enacted LD-15 in the Yakima Valley (the "Prior Map") violated Section 2 and issued judgment in Plaintiffs' favor on August 10, 2023. Dkts. #218, 219. After a robust remedial process, this Court issued an order directing the State of Washington and Secretary Hobbs to adopt a map to remedy the violation, known as Map 3B. Dkt. #290. Map 3B, which was drawn without consideration of race, was used for the 2024 election.

The State Defendants did not appeal. Instead, Intervenors—present in this case by permissive intervention only, Dkt. #69—appealed both decisions. On August 27, 2025, the Ninth Circuit held that Intervenors lacked standing to appeal on liability, and though one Intervenor had standing to appeal on remedy, his appeal failed. *Soto Palmer v. Hobbs*, 150 F.4th 1131, 1138 (9th Cir. 2025). On January 23, 2026, Intervenors filed a petition for a writ of certiorari. *Trevino v. Hobbs*, No. 25-918. Responses to the petition are due June 2, 2026.

On April 29, 2026, the Supreme Court decided *Callais*, which arose from Section 2 and Equal Protection challenges to Louisiana's congressional map. *Callais* alters in some respects the framework of *Thornburg v. Gingles*, 478 U.S. 30 (1986), under which Section 2 cases are analyzed. However, the "update[s]" and "realign[ments]" in *Callais*, slip op. 29, do little to undermine this Court's considered judgments here.

Nevertheless, on May 4, 2026, Intervenors filed a motion for relief from both this Court's liability and remedial judgments under Rule 60(b), citing *Callais*. Dkt. #309. This Court ordered a response by May 11.

PLAINTIFFS' OPPOSITION TO                                    2
INTERVENOR-DEFENDANTS'
60(B) MOTION

**ARGUMENT**

**I.    Jurisdictional and prudential considerations counsel against relief.**

First, it is not clear that this Court has jurisdiction to rule on Intervenors' Rule 60(b) motion. The Ninth Circuit's decision, which still stands, held that Intervenors lack any harm sufficient to establish standing to challenge this Court's liability decision. *Soto Palmer*, 150 F.4th at 1141-43. Intervenors' Rule 60(b) Motion is simply an attempt to get around that foundational jurisdictional problem. But standing must be demonstrated "at all points during the litigation," *Meland v. WEBER*, 2 F.4th 838, 848 (9th Cir. 2021), and Intervenors cannot do so. Just as Rule 60(b) may not be used to "allow litigants to circumvent the appeals process" for parties who choose not to appeal, neither should it provide an avenue to circumvent fatal jurisdictional deficiencies for parties whose appeal was dismissed. *See Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982). Both "undermine greatly the policies supporting finality of judgments." *Id.*

Second, Intervenors' cert petition is pending. Thus, even if this court has jurisdiction—and especially if it does—this Court should await action, if any, from the Supreme Court. This Court has the power to control its docket and manage judicial resources, and prudential considerations strongly counsel against granting Intervenors' motion. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Indeed, the questions in Intervenors' cert petition include whether Intervenors even have standing to challenge this Court's liability decision, in addition to their baseless challenges to Map 3B, both of which could influence further litigation here. In combination with the large-scale disruption of an ongoing primary election Intervenors' request would cause, *see infra*, these considerations substantially weigh against granting the 60(b) motion.

Furthermore, Intervenors' requested relief is directly contradicted by arguments they advanced in their cert petition. In this Court, Intervenors contend that the "only legally viable"

path is "to restore [the Prior Map] adopted by the independent and bipartisan Commission," and that they should not "remain subject to a judicial override of the Commission's work." Dkt. #309 at 9, 11. But at the Supreme Court, Intervenors claim that the Prior Map "constitutes a racial gerrymander that violates equal protection," Cert. Pet. at 1. Intervenors thus seek to impose a map they assert is illegal—which would result in *no* legal map in place for the 2026 election—*during an ongoing election*.[1] This absurd request weighs heavily against granting relief here.

For the same reasons, an indicative ruling under Rule 62.1 is unwarranted. Given the threshold questions in Intervenors' cert petition (including standing) and the disruption an indicative ruling would cause to the 2026 elections, this Court should wait for resolution of Intervenors' pending cert petition and deny Intervenors' one-sentence request under Rule 62.1.

## II.    *Purcell* prohibits a change to the map before the 2026 elections.

The *Purcell* principle does not permit a change to the state's current legislative map amid an ongoing primary election. *Purcell v. Gonzalez*, 549 U.S. 1 (2006). The candidate filing period has now closed, and candidates are already raising money and actively campaigning, including in LD-14.[2] Changing the map now is exactly the sort of last-minute alteration of election rules that federal district courts have consistently been instructed to avoid. *Abbott v. League of United Latin Am. Citizens*, 146 S. Ct. 418, 419 (2025) (barring a federal court from altering Texas' 2026 congressional map even *before* the close of candidate filing); *Merrill v. Milligan*, 142 S. Ct. 879, 880-81 (2022) (Kavanaugh, J., concurring). Disrupting the process even closer to the election, as

---

[1] Intervenors' counsel also represent another client asking the Supreme Court to invalidate the district that Intervenors ask this Court to reinstate. *Garcia v. Hobbs*, No. 25-901 (*cert. filed* Jan. 23, 2026).

[2] Public Disclosure Commission, *Public Disclosure Data—Candidates*, https://perma.cc/TC99-QLX4 (last visited May 11, 2026) (listing candidates running and fundraising in LD-14).

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

4

Intervenors propose, would represent significant federal intrusion into the State's election calendar and cause substantial confusion and disruption to candidates, voters, and election officials amid an already active primary campaign. *Abbott*, 146 S. Ct. at 419; *see also* Dkt. #313. These effects far outweigh any harm from proceeding under the existing map.

This Court recognized as much when it denied Plaintiffs' motion for preliminary injunction against the Prior Map filed in February 2022, months earlier in that election year—despite Plaintiffs presenting much more evidence of harm and the Court ultimately concluded that map violated Section 2. Dkt. #66. This Court denied Plaintiffs' motion on April 13, 2022, citing the upcoming candidate filing period and the forthcoming August 2 primary. *Id.* at 9. Intervenors' motion asks this Court for similar relief *after* the May 8 close of candidate filing and ahead of the August 4 primary election. The Court's *Purcell* considerations in 2022 apply with greater effect today, and disfavor relief.

**III.    This Court's liability judgment should not be set aside.**

If this Court reaches the merits of Intervenor's motion, Rule 60(b) does not justify vacating this Court's liability judgment. Rule 60(b)(5) relief is inappropriate because Intervenors face no "inequity" from the enforcement of a judgment that causes them no harm. Moreover, Plaintiffs prevail even under the updated *Callais* framework, making continued enforcement of the liability judgment equitable. Nor does the *Callais* decision constitute an "extraordinary circumstance" warranting relief under 60(b)(6). This Court's liability judgment should stand.

**A.  Enforcement of the liability determination is not inequitable.**

Intervenors claim that leaving in place this Court's liability determination would be "inequitable" under *Callais*, and demand that it be set aside under Rule 60(b)(5). Dkt. #309 at 5.

But Intervenors "bear[] the burden of establishing that changed circumstances warrant relief." *Horne v. Flores*, 557 U.S. 433, 447 (2009). They fail to carry that burden for two main reasons: 1) they lack standing and face no hardship from the liability judgment, and 2) Plaintiffs can demonstrate Section 2 liability even under *Callais*.

*First*, Intervenors lack standing and so face no hardship from enforcement of the liability determination. Before addressing the merits of the Rule 60(b)(5) motion, this Court must ensure Intervenors have standing. *Horne*, 557 U.S. at 445. They do not. In *Horne*, on which Intervenors principally rely, the Court addressed the 60(b)(5) motion only after determining that the party seeking relief from judgment had standing because the "current injunction r[an] against him." *Id.* Here, "none of the Intervenors has standing to challenge the liability determination." *Soto Palmer*, 150 F.4th at 1141. That is because Intervenors provided no evidence that "in reaching its liability determination, the district court classified them based on their race." *Id.* at 1142. Furthermore, Intervenor Trevino did not allege that the liability determination "'required him to do anything or to refrain from doing anything' because of his race or otherwise." *Id.* (citing *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024)). And Intervenor Ybarra's claim about reduced reelection chances "does not support standing as to the liability determination, because it is not traceable to that judgment." *Id.* at 1143.[3] Facing no harm from the liability judgment, Intervenors cannot claim that continued enforcement of it is inequitable.[4]

*Second*, Plaintiffs prevail even under the *Callais* framework, making continued enforcement of this Court's liability order equitable. In *Callais*, the majority opinion stated that it

---

[3] Intervenor Ybarra (now running for Senate in LD-13) is unopposed and thus faces no harm. VoteWA, *Primary 2026*, https://perma.cc/DJ7A-VNMC (last visited May 11, 2026).

[4] Intervenor Campos also lacks standing and "provided no clue" as to what harm he suffered. *Soto Palmer*, 150 F.4th at 1143. His absence from Intervenors' motion suggests he is not seeking relief.

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

6

did not "abandon[]" the Section 2 *Gingles* framework but instead "update[d]" it. *Callais*, slip op. 26, 29. First, *Callais* announced two additions to the first *Gingles* precondition: illustrative maps "cannot use race as a districting criterion," and "must meet all the State's legitimate districting objectives." *Id.* at 29. Second, for the second and third *Gingles* preconditions, Plaintiffs must "control[] for party affiliation." *Id.* at 30. Third, under *Callais*, the totality inquiry must give less weight to discrimination that occurred "some time ago" and to present-day disparities resulting from that past discrimination. *Id.* at 30-31. Instead, "current data and current political conditions that shed light on current intentional discrimination" are particularly germane. *Id.* at 31 (citation modified). *Callais* says nothing about any other aspects of the totality test.

Applying this framework, Section 2 liability remains. There are multiple maps in the record that meet the requirements of the first *Gingles* precondition as altered by *Callais*. All the proposed remedial maps (including the ultimately selected Map 3B) were drawn without considering race. Dkt. #245-1 ¶ 13 (Oskooii Report); Dkt. #254-1 ¶ 37 (Oskooii Rebuttal); Dkt. #297 at 29:4-8, 32:1-6 (Oskooii testimony). Additionally, Map 3B meets the State's districting objectives: it is "consistent with . . . state law and traditional redistricting criteria," and it "preserve[s] the integrity of the [Yakama] Reservation and all off-Reservation trust lands designated by the U.S. Census." Dkt. #290 at 4-5. The Map was also drawn without reference to political data, in accordance with state law. *Id.* at 9 (quoting RCW 44.05.090(5)). Map 3B also maintains the partisan breakdown negotiated by members of the Commission, including in LD-14, which elected a Republican senator and two Republican representatives in the 2024 election.[5] The overall political balance of the map also aligns with the Commission's stated goals. Dkt. #290 at 10.

---

[5] Wash. State Legislature, *District Finder*, https://app.leg.wa.gov/districtfinder/displaydistrict/14 (last visited May 11, 2026).

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

In meeting the second and third preconditions, race and party were sufficiently disaggregated, as *Callais* now requires. The State's expert, Dr. Alford, persuasively testified about "a real ethnic effect on voting in this area" as distinct from a partisan one. Trial Tr. at 853:15-854:15 (Alford). Additionally, Plaintiffs' expert Dr. Collingwood demonstrated that Latino-preferred candidates were defeated by white bloc voting in numerous *nonpartisan* races, further distinguishing race from party. Trial Ex. 1 at 15-16 (Collingwood Report). Intervenors' own expert, Dr. Owens, identified evidence of Latino voters cohesively voting for a Republican candidate rather than a Democrat, yet that candidate still lost due to white voting patterns, Dkt. #218 at 11 n.8 & 30 n.14, further "disentangling race and politics." *Callais*, slip op. 30. And Intervenors' counsels' other client, Mr. Garcia, testified about the racial discrimination he faced running as a candidate in the Republican primary, Dkt. #191-7, 75:9-77:13, 90:12-91:13 (Garcia Deposition), strong evidence of "intra-party racial-bloc voting," that demonstrates that minority voters have "less opportunity than their majority counterparts because of race, not just because of partisan affiliation." *Callais*, slip op. 30 (internal quotation omitted).

With regard to the totality analysis, while this Court's opinion acknowledged the history of racial discrimination in the Yakima Valley and the disparities that have persisted because of it, the Court also described discriminatory "official election practices and procedures" that were used "as recently as the last few years," Dkt. #218 at 15, and noted that Latino voters in the region have faced official discrimination that "continues to impact their rights to participate in the democratic process." *Id.* at 17. The Court's opinion also discussed racial appeals and use of racial "dog-whistles" in campaigns, very limited success of Latino candidates, and elected officials' lack of responsiveness, all totality factors about which *Callais* said nothing, and which further

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

8

demonstrate the centrality of race rather than partisanship in voting behavior. *Id.* at 20-24; *see also* Trial Ex. 4 at 63-77 (Estrada Report). Plaintiffs thus prevail even under the *Callais* test.

Moreover, to the extent *Callais* insists upon evidence supporting a finding of "intentional present-day voting discrimination," slip op. 30-31, Plaintiffs supplied that too. But because this Court already found the Prior Map invalid, it found that it "need not decide plaintiffs' discriminatory intent claim." Dkt. #218 at 3. Because of this unadjudicated claim, grant of the 60(b) motion is particularly inappropriate—at most, the Court should supplement the record with further findings in the event of a Supreme Court remand.

**B. *Callais* is not an "extraordinary circumstance" that warrants setting aside the liability determination.**

The *Callais* decision is not an "extraordinary circumstance" that warrants relief from the liability judgment under Rule 60(b)(6), which is available "only in narrow circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). While a change in law may reach this threshold, circumstances are "hardly extraordinary if a decision rests on a then-prevailing interpretation of the law and the Supreme Court later arrive[s] at a different interpretation." *Fed. Trade Comm'n v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023) (citation modified). When a change in law is the basis for an allegedly "extraordinary circumstance," courts must perform a "case-by-case inquiry" that "intensively balance[s]" all relevant factors. *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 445-46 (9th Cir. 2019). Those factors include the nature of the change in law, movants' diligence in pursuing relief, reliance interests on the finality of the judgment, delay between judgment and the Rule 60(b) motion, relationship between the judgment and the change in law, comity between federal courts and state sovereigns, and additional relevant circumstances. *See, e.g., Ege v. Express Messenger Sys., Inc.*, No. 2:16-CV-1167-RSL, 2019 WL 6701342, at *3-6

(W.D. Wash. Dec. 9, 2019) (Lasnik, J.) (applying *Henson*). Weighing all relevant considerations, Intervenors fail to demonstrate the "extraordinary circumstances necessary to grant relief under Rule 60(b)(6)." *Id.* at *7 (internal quotation omitted).

The change in law factor does not weigh in favor of granting the motion. While *Callais* altered the analytical framework for Section 2 liability, it did not "directly overrule[]" the caselaw that underpinned this Court's judgment. *Hewitt*, 68 F.4th at 468. Because the challenged judgment was correct under "then-prevailing precedent," as the Ninth Circuit has since affirmed, this factor weighs against relief. *See id.* at 469. The applicability of the *Gingles* preconditions and totality analysis to Plaintiffs' Section 2 claim was not an open or unsettled question of law, but the routine application of a nearly 40-year-old precedent. A judgment based on the "accurate application of then-settled law—even after the Supreme Court overrules such precedent—is 'hardly extraordinary.'" *Bynoe v. Baca*, 966 F.3d 972, 983 (9th Cir. 2020) (citing *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). Moreover, the outcome was also correct under *Callais*, as explained *supra*, underscoring why the change in law weighs against granting the motion.

Similarly, the relationship between the original judgment and the change in law also does not support granting the motion. Though *Callais* "update[d]" and "realign[ed]" the legal framework on which this Court's judgment was based, it did not overrule that framework or address the factual particulars of this case. *See Venoco, LLC v. Plains Pipeline, L.P.*, No. 21-55193, 2022 WL 1090947, at *2 (9th Cir. Apr. 12, 2022) (finding a close connection where intervening case "involved the same oil spill, the same legal doctrine, and the same defendant" as the challenged judgment). The case is not close beyond generally being about Section 2, and thus closeness weighs against granting the motion.

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

10

The comity factor addresses the relationship between "the independently sovereign state and federal judiciaries" that might be implicated by granting 60(b)(6) relief. *Phelps v. Alameida*, 569 F.3d 1120, 1139 (9th Cir. 2009). A case that "hinges" on the interaction between state and federal law "goes to the heart of comity's concern" with this relationship. *Venoco, LLC*, 2022 WL 1090947, at *3. Here, the question is about the validity of a state law, granting relief would significantly disrupt ongoing state elections, and the State opposes relief. Comity thus weighs against granting the motion.

Similarly, reliance interests in finality weigh against granting the motion. The election is *already ongoing*, and Plaintiffs (and other voters) are relying on this Court's judgment for their conduct in that election, resulting in concrete reliance beyond an "abstract interest in finality." *See Henson*, 943 F.3d at 450. The remedial map put in place following the liability judgment and Plaintiffs' reliance on it are "effects" of that judgment that would be "disturbed" if the motion were granted. *Id.*

While Intervenors advanced many of the same arguments throughout this litigation that they advance here, and there was relatively minimal delay between the judgment and the present motion, these considerations must be weighed with "all the relevant factors together" along with an evaluation of "the circumstances of this case." *Henson*, 943 F.3d at 455. Performing that holistic analysis of circumstances—particularly considering the weighty *Purcell* considerations and Intervenors' lack of legally protected interests in this case—demonstrates that there are no "extraordinary circumstances," and that granting the 60(b)(6) motion would not "accomplish justice."

PLAINTIFFS' OPPOSITION TO                                11
INTERVENOR-DEFENDANTS'
60(B) MOTION

**IV. This Court's remedial judgment should not be set aside.**

Rule 60(b) also provides no support to set aside Map 3B, which was selected in a thorough and race-neutral process and is currently being used in an ongoing primary election. As with the liability judgment, Intervenors may not be *relieved* from a judgment under Rule 60(b)(5) that does not otherwise burden them. *See, e.g.*, *Relieve*, Meriam-Webster's Dictionary, https://perma.cc/G5GJ-MP3P (defining "relieve" as "to ease of a burden, wrong, or oppression by judicial or legislative interposition"). It also cannot be inequitable to leave Map 3B undisturbed when it survives review under *Callais*, and *Callais* provides no "extraordinary circumstance" to warrant Rule 60(b)(6) relief.

**A.  Rule 60(b)(5) does not support setting aside the remedial map.**

Rule 60(b)(5) does not support setting aside the remedial map. Intervenors have failed to show that they are harmed by Map 3B or that there is anything invalid about the map, and thus cannot demonstrate "inequity." The Ninth Circuit found that no Intervenor had standing to challenge Map 3B "as an illegal remedy under Section 2." *Soto Palmer*, 150 F.4th at 1143. The Ninth Circuit did find that Intervenor Trevino had standing to challenge Map 3B as a racial gerrymander (despite having likely forfeited the claim), but after thorough analysis affirmed this Court's remedial order. *Id.* at 1150. Rule 60(b)(5) relief is thus unwarranted.

Nor does *Callais* render the remedial order invalid. In a racial gerrymandering case, a challenger must show that race was the "predominant consideration" in how the district lines were drawn. *Callais*, slip op. 9 (citing *Bush v. Vera*, 517 U.S. 952, 964 (1996)); *see also* Dkt. #309 at 1 (*Callais* "confirm[s] that race may not be used as a predominant factor . . ."). If race predominates, then strict scrutiny is applied, requiring a compelling justification for the use of race that is narrowly tailored. *Callais* did not change this—it held that compliance with Section 2 "*as properly*

PLAINTIFFS' OPPOSITION TO                    12
INTERVENOR-DEFENDANTS'
60(B) MOTION

*construed*, can provide such a [compelling] reason." *Id.* at 2 (emphasis in original); *see also id.* at 39-40 n.11 (Kagan, J., dissenting) (recognizing this holding as one the Court has "made plain many times before").

Race was not considered in the drawing of the remedial map, and it certainly did not predominate. "Nothing in the record . . . supports a claim that race predominated in the redistricting process." *Soto Palmer*, 150 F.4th at 1146. The map was drawn without racial data. Dkt. #245-1 ¶ 13; Dkt. #254-1 ¶ 37; Dkt. #297 at 29:4-8, 32:1-6. And this Court "accomplished three distinct, non-racial objectives" in adopting the map, *Soto Palmer*, 150 F.4th at 1146, and Map 3B complies with the State's stated goals. This Court's "thoughtful attention to the details of the maps, population and voter numbers, and viable alternatives does not furnish evidence of racial predominance." *Id.* at 1148. "[N]ot all mentions of race trigger strict scrutiny," *id.* at 1146, and because race did not predominate, strict scrutiny would not apply.[6]

Even if Map 3B were analyzed under strict scrutiny, it would still pass muster because it was drawn to remedy a Section 2 violation, which *Callais* confirmed is a compelling interest. As explained *supra*, this Court's liability order comports with *Callais*'s read of Section 2. Intervenors cite caselaw to claim that "a court must modify an injunction if the law underlying it has been overruled." Dkt. #309 at 10. But according to the *Callais* majority, no case has been overruled—

---

[6] Intervenors suggest that *Callais* somehow changed the standard for racial gerrymandering cases, and that strict scrutiny now applies even in the absence of a showing of predominance. Dkt. #309 at 10. *Callais* did not say so, and such a holding would overturn at least *Miller v. Johnson*, 515 U.S. 900 (1995), *Bush v. Vera*, 517 U.S. 952 (1996), and *Cooper v. Harris*, 581 U.S. 285 (2017). The Supreme Court speaks plainly when it overrules precedent, and it did not overrule a line of significant cases *sub silentio*. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). But even if it did, the outcome in this case would be the same because race was not considered *at all* in the drawing or selection of the map.

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

13

not *Gingles*, and not *Allen*, which reaffirmed *Gingles* just three years ago. *Allen v. Milligan*, 599 U.S. 1, 24 (2023).

**B. Rule 60(b)(6) also provides no support to invalidate the remedial map.**

For reasons previously discussed, *Callais* is not an "extraordinary circumstance" warranting relief from the remedial judgment. The *Callais* majority stated that it did not overturn but *reaffirmed* existing caselaw on the drawing of a remedial map upon a Section 2 violation. The comity and reliance factors are similarly weighty given the close of the candidate filing period and the ongoing election taking place using Map 3B. *See Henson*, 943 F.3d at 455. Moreover, Intervenors face no burden warranting relief from the existence of the remedial map. *See Soto Palmer*, 150 F.4th at 1138.

In arguing that *Callais* constitutes an "extraordinary circumstance" warranting 60(b)(6) relief, Intervenors contend that Map 3B exhibits an "express consideration of race" in its compliance with Section 2, and that *Callais* "clearly bars" such consideration. Dkt. #309 at 11. Neither of these statements is true. Map 3B wasn't drawn or adopted with "express consideration of race;" it was drawn with *no* consideration of race and adopted to accomplish "non-racial objectives." *Soto Palmer*, 150 F.4th at 1146. There was no express consideration, and certainly no predominance. Moreover, under *Callais*, "compliance with the Voting Rights Act can indeed provide a compelling reason for race-based districting." slip op. 2. Considering "all the relevant factors together," along with an evaluation of "the circumstances of this case," Rule 60(b)(6) provides no grounds for relief. *Henson*, 943 F.3d at 455.

PLAINTIFFS' OPPOSITION TO                        14
INTERVENOR-DEFENDANTS'
60(B) MOTION

## CONCLUSION

For the reasons above, the Court should deny Intervenors' Rule 60(b) motion and decline to issue an indicative ruling under Rule 62.1. To the extent any further action is warranted, this Court should wait until after any possible remand from the Supreme Court.

Dated: May 11, 2026                                     Respectfully submitted,

                                                         By:/s/ Annabelle E. Harless
Edwardo Morfin                                           Annabelle E. Harless*
WSBA No. 47831                                           CAMPAIGN LEGAL CENTER
MORFIN LAW FIRM, PLLC                                    55 W. Monroe St., Ste. 1925
2602 N. Proctor Street, Suite 205                        Chicago, IL 60603
Tacoma, WA 98407                                         aharless@campaignlegal.org
Telephone: 509-380-9999

                                                         Mark P. Gaber*
Chad W. Dunn*                                            Simone Leeper*
Sonni Waknin*                                            Aseem Mulji*
UCLA VOTING RIGHTS PROJECT                               Benjamin Phillips*
3250 Public Affairs Building                             CAMPAIGN LEGAL CENTER
Los Angeles, CA 90095                                    1101 14th St. NW, Ste. 400
Telephone: 310-400-6019                                  Washington, DC 20005
Chad@uclavrp.org                                         mgaber@campaignlegal.org
Sonni@uclavrp.org                                        sleeper@campaignlegal.org
                                                         amulji@campaignlegal.org
Thomas A. Saenz*                                         bphillips@campaignlegal.org
Ernest Herrera*
MEXICAN AMERICAN LEGAL
  DEFENSE & EDUCATIONAL FUND
643 S. Spring St., 11th Fl.
Los Angeles, CA 90014
Telephone: (213) 629-2512                                *Counsel for Plaintiffs*
tsaenz@maldef.org                                        *Admitted pro hac vice
eherrera@maldef.org

PLAINTIFFS' OPPOSITION TO                           15
INTERVENOR-DEFENDANTS'
60(B) MOTION

**CERTIFICATE OF WORD COUNT COMPLIANCE**

I certify that this memorandum contains 4198 words, in compliance with the Local Civil Rules.

/s/ Annabelle E. Harless
Annabelle E. Harless
*Counsel for Plaintiffs*


**CERTIFICATE OF SERVICE**

I certify that all counsel of record were served a copy of the foregoing this 11th day of May 2026, via the Court's CM/ECF system.

/s/ Annabelle E. Harless
Annabelle E. Harless
*Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO
INTERVENOR-DEFENDANTS'
60(B) MOTION

16